CULPEPPER, Judge.
This is a suit for damages for personal injuries sustained by Miss Lynne Dell Ad *312 ams, a minor, in an automobile collision. The plaintiff is Bert A. Adams, who sues individually and as tutor for Miss Adams. Defendants are: (1) William Allen Coat-es, father of Billy Allen Coates, minor driver of the automobile in which Miss Adams was a passenger; (2) Coates’s insurer, Bituminous Casualty Corporation; (3) Charles Watley, driver of the other vehicle involved; (4) Watley’s insurer, The Employers Liability Assurance Corporation, Ltd. The district judge found both drivers negligent and awarded judgment accordingly. All defendants appealed. Plaintiff answered the appeal, seeking an increase in the award.
The issues are factual. Each driver contends the accident was caused solely by the negligence of the other. Additionally, there is an issue as to quantum.
The accident occurred during clear, dry weather on April 3, 1967 at about 3:30 p. m. The scene is Louisiana Highway #494, a two-way, two-lane, blacktopped thoroughfare running generally north and south through a rural area about four miles south of' the City of Natchitoches, Louisiana. The speed limit is 60 miles per hour and there are no traffic control signs or devices at issue.
The 1967 Ford Falcon automobile driven by young Coates was also occupied by Doyle Brumfield, Marilyn Sloop and Miss Adams, all students at Northwestern State College. The other vehicle was a 1961 Chevrolet pickup truck, owned by J. S. Pratt, (not a party to these proceedings) being driven by his Negro employee, Charles Watley, and occupied by F. T. Johnson and Arthur Goston as passengers.
Although there are discrepancies in the testimony of his witnesses, generally speaking Coates’s version of the accident is as follows: He was driving in a southerly direction on the highway when the pickup truck entered the highway from a farm road on the east about 14 mile ahead. After proceeding slowly in a southerly direction a short distance, the truck moved into the left lane of traffic and further decreased speed. Coates continued in his own lane, intending to pass to the right of the truck. Finally, the pickup truck turned back to the right across the highway toward a private road, in such a manner that it was impossible for Coates, due to his speed, to avoid striking the rear end of the pickup truck.
On the other hand, the driver of the truck contends he was proceeding slowly . in a southerly direction in his own lane of traffic, preparing to turn to the right onto the private road, when he was suddenly struck from the rear by the Coates vehicle.
In a detailed and well considered written opinion, the district judge found the following facts which are fully supported by the evidence:
“The Chevrolet Pickup truck driven by Charles Watley was traveling in a southern direction after entering Louisiana Highway 494. That for a short distance of the approximate 900 feet it traveled it was in the south bound or right lane. It then was driven slowly at an angle to the left until it was straddle of the center white line of the highway. That the driver upon nearing the roadway on the West side of the highway, on which he planned to enter by making a right turn, veared slightly to the left and began the right turn into the dirt roadway. The driver gave no visible signal and did not look to determine if there was any oncoming or overtaking traffic. The collision between the Chevrolet Pickup and the oncoming Falcon took place during the right turn of the pickup. The right rear wheel of the pickup was about 3 feet west of the center line of the highway at the instant of the collision. The pickup came to rest as described by the trooper. (The front of the Falcon struck the right rear of the truck, causing the rear of the truck to swing around clockwise. The truck came to rest headed generally north, with the right front wheel off the *313 pavement and the right rear wheel on the blacktop.)
“One of the physical factors that indicate the action taken by the driver of the pickup is shown in the Exhibit P. 1 a picture of the intersection of Louisiana Highway 494 and the dirt road. A mail box and post would cause the average driver to veer to the left in order to make the right turn onto the dirt road. This and lack of alertness plus the failure to comply with the rules for the use of our highways, on the part of Watley contributed to the improper right turn by Watley.”
The district judge correctly found Watley negligent for failure to comply with LSA-R.S. 32:101 which requires a right turning motorist to stay as close as practicable to the right-hand edge of the roadway. Also, LSA-R.S. 32:104 which requires a turning motorist to give a signal for at least 100 feet of his intention to turn and to refrain from turning unless such movement can be made with reasonable safety.
As to young Coates, the trial judge correctly found he was also guilty of negligence as follows:
"Billie Allen Coates, the driver of the Falcon vehicle, was guilty of negligence in the following respects. For some time prior to the accident he had been cautioned about exceeding the speed limit. (The evidence shows Miss Adams complained at least once as to Coates’s speed.) These warnings he did not heed. As he approached the Chevrolet pickup he was aware of the unusual maneuvering of this vehicle. He even had time to discuss this with the passenger Brum-field. Regardless of Billie’s duty to his guest passengers he took no precautionary steps but increased his speed and attempted to pass the Chevrolet Pickup on its right side.
“LSA-R.S. 32:81—Provides that the following vehicle should not follow another vehicle more closely than is reasonable and prudent having due regard for the speed of such vehicle * * *.’ This Billie did not do. In the case of Blake vs. Travelers Indemnity Co., 188 So.2d 672, the Court stated:
“ ‘There is no dispute with respect to the legal principle established, both by statute and jurisprudence, that the driver of a following vehicle is charged with the obligation of preserving such an interval and rate of speed as will permit him to avoid a collision with a preceding vehicle.’ ”
“Billie’s course of conduct upon observing the improper driving of the Chevrolet Pickup was not that of a reasonable prudent driver. He failed to take any precautions and made a wrong assumption and heedlessly acted upon it with total disregard of the safety of his guest passengers.”
The final issue is the quantum of damages. The district judge’s award was as follows:
Medical expense $1,021.57
Cost of future surgery to fuse the ankle joint 1,000.00
College expenses lost 200.00
General damages to Miss Adams 15,000.00
Soon after the accident, Miss Adams was seen by Dr. E. H. Byrd, a general practitioner in Leesville, who diagnosed “compound fractures of the left tibia and fibula in the ankle. Abrasions to right leg and forehead and some contusions to the anterior chest wall.”
Due to the severity of the ankle fracture, Miss Adams was referred to Dr. T. E. Banks, an orthopedic surgeon of Alexandria.
Dr. Banks surgically repaired the fracture by open reduction, using a 21/2 inch metal screw and a 7 inch metal pin to hold the tibia and fibula in place. Miss Adams was hospitalized in Alexandria April 3-9, *314 1967, then transferred to a hospital in Leesville where she remained for an additional 8 days. Initially a long-leg cast was applied, extending from the toes to mid-thigh. On May 19, 1967, a short-leg walking cast was applied, extending from the toes to the knee. The last cast was removed June 9, 1967. She then used a cane for an additional 6 weeks.
Although recovery has been good, considering the amount of tissue damage and bone fracture involved, Miss Adams will have permanent disability of the left ankle. As of January 22, 1968, it was Dr. Banks’s opinion that Miss Adams had about 60% normal motion of the ankle, which would improve to a degree with further healing and stabilization of blood circulation. However, he estimated an ultimate residual of 25% permanent, partial disability of the left leg as a whole, this percentage including both loss of motion and the potential of traumatic arthritis and circulatory problems.
Miss Adams was also seen by Dr. E. C. Simonton, an orthopedic surgeon of Shreveport, who estimated her ultimate permanent residual disability of the left leg as a whole at 25% to 35%.
Dr. Bennett Young, also an orthopedic surgeon of Shreveport, gave an opinion essentially similar to that of Dr. Banks.
In summary, Miss Adams had general bruises and abrasions of the legs and chest from which she has recovered. The residuals will be scars of the left ankle and at least 25% permanent, partial disability of the left leg as a whole. She will be able to walk with a limp but will not be able to engage in strenuous exercise, such as dancing and sports.
One of the issues is whether it will at some future date be necessary to fuse the ankle joint or the subtalar joint, about 1 inch below the ankle joint, due to pain and possible development of traumatic arthritis. As noted above, the trial judge was of the opinion there was sufficient probability of this development to make an award of $1,-000 for future surgery to fuse the ankle joint. Defendants make a strong argument that the three specialists, Drs. Banks, Simonton and Young, did not think fusion would be necessary. However, they said it is always a possibility with a severe fracture of a weight bearing joint. Furthermore, the doctors agree she will probably need some future medical treatment regardless of whether fusion is necessary. Considering the award as a whole, rather than itemized, we are not disposed to reduce it. Actually, it is low. Certainly it is not excessive.
In view of the large discretion of the trial judge as to awards for personal injuries, we find in this case no abuse of discretion.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellants.
Affirmed.