GARDINER, Judge.
Plaintiff, now a sergeant in the Sheriff’s Office of the Parish of Jefferson, was injured as a result of a collision between the motorcycle he was operating and a truck belonging to the Sanitation Department of the parish and driven by its employee Rene A. Chopin. Plaintiff sued defendants, Chopin and the liability insurer of the truck, to recover for personal injuries and special damages caused by the alleged negligence of defendant Chopin. Defendants answered denying the charges of negligence, averring the negligence of plaintiff as the proximate cause of the accident and alternatively pleaded contributory negligence on the part of plaintiff. Judgment was rendered in favor of plaintiff in the sum of $15,110.51 which included $110.51 as special damage. From that judgment defendants appealed, and plaintiff has answered the appeal asking for an increase in the amount awarded for his personal injuries and for expert witness’ fees.
On motion for summary judgment, plaintiff’s suit against Millers Mutual Fire Insurance Company, personal liability insurer of defendant Chopin, was dismissed.
The collision occurred about 11:30 a. m., on May 26, 1965, near the “T” intersection of North Turnbull Drive and Forty-third Street in the Parish of Jefferson. North Turnbull Drive runs in a southerly direction towards Airline Highway, and Forty-third Street runs in an east-west direction where counsel for plaintiff states, it terminates at North Turnbull Drive, which is a “paved, two lane heavily traveled main thoroughfare,” the speed limit thereon *297 being 20 miles an hour. Forty-third Street is shelled or graveled and “leads into a residential section.”
In his written reasons for judgment the trial judge briefly stated the factual situation as to the occurrence of the collision as follows: Plaintiff “was in hot pursuit of a fleeing Volkswagen automobile on North Turnbull Drive, * * *. Both vehicles were proceeding in a southerly direction toward the Airline Highway. Also driving in a southerly direction on North Turnbull and ahead of the Volkswagen and the motorcycle was a Department of Sanitation truck operated by Rene Chopin. When Chopin was about 75-80 feet from the intersection of North Turnbull and Forty-third Street, he said that the Volkswagen zipped past at approximately 30-35 miles per hour. Chopin was driving at 20-25 miles an hour. The Volkswagen went past the Forty-third Street intersection and continued hurriedly toward the Airline Highway. Sgt. Roach [plaintiff] also attempted to pass Chopin’s truck but Chopin, unaware of the motorcycle’s presence, commenced a left turn into Forty-third Street, causing the motorcycle and truck to collide. Chopin admitted that he had not looked into his rear-view mirror prior to starting the left turn.”
According to plaintiff he had been following the Volkswagen “clocking” it for a block, estimated by him at a speed of 35-40 miles an hour. He says that he “put on his red light and siren [which makes an ‘extra loud noise’] to pull him over, * * * ” about a half block from the corner, but then the Volkswagen “went around the truck” at which time plaintiff says he also proceeded around the truck and that was his last recollection. As he was attempting to pass the truck he remembers that he was abreast of it when the impact occurred. He said the driver of the truck gave no signal of his intention to turn to the left in front of him. Defendant Chopin’s version of the accident is completely contradictory for he relates that when he reached a point about 70-80 feet north of the corner of North Turnbull and Forty-third, while proceeding at the rate of 20-25 miles an hour, the Volkswagen, which he had observed behind him, passed his truck despite the fact that he was signaling to make a left turn by means of both an arm signal and the turn signal on the rear of the truck. He then reduced his speed to 12-15 miles an hour and turned his truck toward the left into Forty-third Street, having withdrawn his arm prior to commencing the turn, and the motorcycle collided with the left side of the truck in front of its rear wheel. The point of impact he said was “on an angle of Forty-third Street * * * two feet of the truck touching North Turnbull.” He testified that he did not see the motorcycle although he had a rear-view mirror mounted on the outside on a bracket, and that he did not hear it until the motorcycle “hit” him, and that was the only time he knew it was around. He applied his brakes as soon as he heard the impact.
Defendants contend that plaintiff’s attempt to pass the Chopin truck at North Turnbull and Forty-third, which they assert is an intersection, was not only a violation of LSA-R.S. 32:76A (2) prohibiting vehicles from being driven to the left side of the highway “when approaching within one hundred feet of or traversing any intersection * * but that plaintiff’s action was also an act of negligence which was the proximate cause of the collision, or alternatively constituted contributory negligence which bars plaintiff’s recovery.
It was said by the Court of Appeal, Third Circuit, in Normand v. American Home Assurance Company, 171 So.2d 804, that in determining whether a particular junction constitutes an “intersection,” as that term is used in LSA-R.S. 32:76, it is proper to consider all of the facts and circumstances relating to that junction, including facts as to the character and appearance of the crossing, the width and type of each of the intersecting thoroughfares, and the presence or absence of any signs or markings which would indicate to *298 an approaching motorist that there is an intersection at that point.
In support of their argument that the two streets form an “intersection” within the intendment of the statute, defendants rely upon a photograph which was offered in evidence by plaintiff in order to establish the point of impact in the street. While there is evidence showing that North Turnbull is a paved or blacktopped two-lane street and Forty-third is graveled or shelled, there is no estimate of the width of the two streets. It is only clear from the photograph that the intersection is unmarked and that there are no signs on North Turnbull indicating that this corner is an intersection, nor is there a yellow line prohibiting vehicles from moving out of the left lane to pass other traffic. The photograph shows residences on both sides of North Turnbull. We cannot, however, find from this photograph that Forty-third Street is easily observable as an intersecting street. Moreover, this factual question was determined by the trial judge who observed that Forty-third Street “is not an obvious major intersecting street.” We agree with him and conclude that plaintiff’s action in attempting to pass the defendant truck was not a violation of the statute and therefore not negligence per se. See, also, Dumas v. Yarbrough, recently decided by this Court, in 221 So.2d 288.
Defendants assert that the preponderance of the evidence discloses that plaintiff did not sound his siren before he collided with the truck. They argue that since plaintiff had no witness to corroborate his testimony that he was sounding his siren, the testimony of defendants’ witnesses who said they did not hear a siren should prevail. These witnesses were defendant Chopin, the driver of the truck, and three ladies who lived on North Turn-bull a block or a few houses away from the corner, one standing in front of her house where she says she watched the motorcycle chasing the Volkswagen but did not watch the truck as they collided; another standing between two houses, and the third sitting in her kitchen drinking coffee with a neighbor. One said the street is noisy with dump trucks passing and motorcycle officers chasing speed violators on North Turnbull Drive. The ladies also said that they often heard sirens 16 blocks away on Airline Highway. While the district judge stated that this testimony is conflicting, he believed that it was entirely improbable that the plaintiff could not have been “in such close pursuit without sounding the siren.” We can give little weight to this type of evidence and it is insufficient to overcome plaintiff’s testimony that he sounded his siren, and to find contributory negligence on the part of plaintiff.
With regard to defendants’ argument that plaintiff was negligent in attempting to apprehend the driver of the Volkswagen who was exceeding the speed limit by some 10 or 15 miles an hour, we say again that plaintiffs’ speed as the driver of an authorized vehicle in performance of his duty as a deputy sheriff was not a contributing cause of the accident. Surely his speed of 30-35 miles an hour under the circumstances cannot be considered as a violation of his duty “to drive with due regard for the safety of all persons,” or that it was a “reckless disregard for the safety of others” under the meaning of LSA-R.S. 32:24. See also, Code of Ordinances, Jefferson Parish, secs. 11-15, p. 261 (Or. No. 185, secs. 18, 10-12-49).
We next come to the main issue, which is the proximate cause of the accident, and quote with approval the factual determination made by the trial judge as follows:
“The proximate cause of the accident was Chopin’s negligence in (1) not looking into his rear view mirror before starting the turn, (2) starting the turn prematurely, before reaching 43rd Street, and (3) attempting a turn without first giving a hand- or mechanical signal. Chopin testified that he neither saw nor heard the motorcycle before the collision.”
*299 As our jurisprudence requires, we accord great weight to the findings of fact of the trial judge. The evidence in this record shows that plaintiff saw no directional signal because, as a matter of fact, defendant Chopin did not give any hand or mechanical signal and plaintiff under the circumstances had the right to begin the passing operation and was drawing abreast of the truck at the time of the collision which occurred when Chopin began angling his course to the left before reaching the intersection.
According to plaintiff’s testimony and the photograph introduced by him into evidence, the point of impact occurred north of the intersection. The investigating officer of the accident testified as to the point of impact from his observation of the debris, mud and oil found on the pavement at a point north of the intersection. Our finding therefore is that the collision did not occur in the intersection as defendant made the left turn on a heavily traveled street directly across it and at a point before entering the intersection when the following vehicle was too close to him and could not avoid the collision. If defendant Chopin had made the slightest and most casual observation for traffic in the rear and had waited until he reached the proper point to make the turn, plaintiff could have completed the passing operation without a collision. Defendant’s failure in this respect before undertaking a lefthand turn, which our jurisprudence has established as a most dangerous maneuver, was, in our opinion, the proximate cause of the accident. Roy v. Edmonson, La.App., 221 So. 2d 583, and cases therein cited.
We do not find that the lower court abused its discretion in awarding plaintiff $15,000.00 for physical injuries. Plaintiff answered the appeal asking for a substantial increase and defendants seek a reduction in the amount.
In the accident which occurred on May 25, 1965, plaintiff was thrown to the street from the motorcycle when the two vehicles came into contact with each other. He was knocked unconscious and he was taken to the hospital where he was incoherent and had to be restrained for about a week due to the head injury. In his written reasons the trial judge described and discussed plaintiff’s injuries. He stated:
“Sgt. Roach’s injuries were painful and extensive. Knee surgery was performed by Dr. John Ochsner, whose report was stipulated into evidence and marked ‘P-10’. The tibia bone was completely detached from the femus, four ligaments were torn and there was no pulse in Sgt. Roach’s foot because the dislocated tibia had blocked the blood flow through the popliteal artery.
“Part of the artery had to be removed and replaced by a vein patch graft.
“Dr. Daniel E. Schecter, an orthopedist, described Sgt. Roach’s knee problems. Small amounts of extra bone have formed in the knee, preventing Sgt. Roach from normally bending his knee. He cannot squat and the condition is permanent.
“Sgt. Roach’s leg remained in a plaster cast until August 9, 1965, then a brace was' installed. In October, 1965, a program of exercises was started but Sgt. Roach still wore the brace when he walked.
“In addition to the aforesaid knee and leg injuries, Sgt. Roach sustained:
“(1) Fractured skull (A left linear fracture from right behind the eye to the ear);
“(2) Fractured bone in foot;
“(3) Severe lower leg lacerations, leaving what was described as a ‘gouged out’ area;
“(4) Fractured clavicle;
“(5) Forehead laceration, which left a visible scar;
“(6) Miscellaneous bruises, lacerations, etc., including a bruise on the left side of the brain.
*300 “The permanent leg disability was set by Dr. Schecter at 25-35 per cent. Sgt. Roach’s left calf is three-fourths (%) of an inch smaller than the right calf due to the loss of muscle bulk. He is now more susceptible to injury than a normal person, Dr. Schecter added.
“Sgt. Roach returned to work about six (6) months after the accident but he still wore a leg brace and was available for limited duty only. He cannot properly ride a motorcycle because of the lack of leg flexibility.”
Dr. Russell C. Grunsten, an orthopedist who examined plaintiff six months after the accident and in January, 1968, before the trial, at the request of defendant insurer, and who was called as a witness by plaintiff, estimated plaintiff’s residual disability at 25%-35% only as to the leg. Dr. John D. Jackson, a neurosurgeon, who examined plaintiff in the hospital and again before the trial, as to the skull fracture and brain contusion, testified that plaintiff’s recovery from a neurosurgical standpoint required five days. Plaintiff complained of dizziness one year after the accident. At the time of the trial in 1968 the flesh wounds on plaintiff’s foot and ankle were causing him much trouble and there was a possibility that he might have to undergo skin graft. Moreover, the doctors agreed that plaintiff’s leg will not improve, may become more serious and is easily susceptible of injury. The residual disability of the leg is fixed by both orthopedists at about 35%. He is limited in his work in that if his work necessitates the use of a motorcycle, it must be a three-wheel motorcycle. However, his same employer continued to give him employment in another capacity and in spite of his limitations. His daily activities and recreation have been curtailed as a result of his injuries.
From our review of all the facts and circumstances, the medical evidence and the reports of the doctors, which show that plaintiff’s injuries were serious, extensive and painful, it is our conclusion that the award fixed by the trial judge is neither insufficient nor excessive.
With respect to the answer to the appeal asking that the judgment be amended by fixing the fees of the medical experts, the record does not show that the trial judge passed on the allowance and the amount of those fees. However, as we said in Jansky v. Lucich, La.App., 159 So. 2d 730, expert witness fees are an element of costs, and when the case is returned to the district court, plaintiff may have that court, on a rule to tax costs, fix the expert witnesses’ fees. See, also, Talley v. Employers Mutual Liability Insurance Co., La.App., 181 So.2d 784, on rehearing.
For the above and foregoing reasons, the judgment appealed from is affirmed, all costs to be paid by defendants.
Affirmed.