277 So.2d 239 (1973)
Mrs. Elton M. MISTICH, Sr. as natural tutrix of the minor, Cynthia D. Peters
v.
Margaret E. MATTHAEI et al.
Margaret MATTHAEI
v.
LOUISIANA DEPARTMENT OF HIGHWAYS and or State of Louisiana.
Nos. 5438, 5439.
Court of Appeal of Louisiana, Fourth Circuit.
May 1, 1973.
*240 George M. McCulloch, Jr., and Jorda S. Derbes, New Orleans, for Margaret Matthaei, plaintiff-appellant.
Steven R. Plotkin, David Gertler, New Orleans, for Mrs. Elton M. Mistich, Sr., plaintiff-appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Ashton R. Hardy, New Orleans, for The Travelers Ins. Co., defendant-appellant.
Riley & Wood, James A. Wood, Baton Rouge, for Dept. of Highways, defendant-appellee.
Blake G. Arata, City Atty. (Robert K. Tracy, Asst. City Atty.), for City of New Orleans, defendant-appellee.
Before REGAN, BOUTALL and SCHOTT, JJ.
SCHOTT, Judge.
These consolidated cases arose out of an automobile accident which occurred on the Chef Menteur Highway in New Orleans at about 9:00 P.M. on September 6, 1967. Involved were a Corvair operated by Chester Wood, Jr., in which Cynthia D. Peters, then the minor daughter of Mrs. Elton M. Mistich, Sr., was a passenger, and a Volkswagen operated by Margaret E. Matthaei, insured for public liability by The Travelers Insurance Company. The suit of Mrs. Mistich and her daughter, Cynthia D. Peters, who subsequent to the filing of the suit became the wife of Chester Wood, Jr., on August 29, 1970, and was duly emancipated *241 thereby, was filed against Mrs. Matthaei and Travelers on allegations of negligence and against the City of New Orleans and the Department of Highways of the State of Louisiana on allegations that they were negligent in connection with a hole in the highway which caused or contributed to the cause of the accident. The companion suit of Mrs. Matthaei was against the Department of Highways on allegations that her injuries were caused by that defendant's negligence in its failure to inspect, maintain and repair the highway. The trial court awarded a judgment to Mrs. Mistich and Mrs. Wood against Mrs. Matthaei and Travelers and dismissed Mrs. Matthaei's suit against the City of New Orleans and the Department of Highways. From this judgment appeals have been taken by Mrs. Matthaei and Travelers.
With respect to the judgment in favor of Mrs. Mistich and Mrs. Wood, Mrs. Matthaei and Travelers specify error in the trial judge's holding that Mrs. Matthaei was negligent; his holding that the Department of Highways was not negligent; and in the amount of the award in favor of Mrs. Wood. In her individual appeal, Mrs. Matthaei has adopted Travelers' position on liability and has asked that this Court reverse the trial judge and award her damages against the Highway Department.
All parties have agreed in this Court that the City of New Orleans has no responsibility for the maintenance of the highway where the accident occurred so that judgment of the trial court insofar as the suits against the City were dismissed may be affirmed without further discussion.
At the place where the accident occurred, Chef Menteur Highway consists of two lanes of traffic on each side of a neutral ground 17 feet in width. Just prior to the accident Chester Wood, Jr. was proceeding well within the speed limit of 45 miles per hour in the lane closer to the neutral ground (inside lane) headed in the direction of New Orleans (inbound) when suddenly, and without any warning whatsoever, his automobile came into collision with Mrs. Matthaei's Volkswagen which had been proceeding outbound from the City on the opposite side of the neutral ground and which crossed over that neutral ground colliding head-on with the Wood automobile. She contends that she was traveling well within the speed limit when her automobile struck a hole in the highway with the result that she lost control of her automobile, crossed over the neutral ground and collided with the Wood automobile without any negligence on her part.
After the impact the Wood automobile veered over to its right and off of the highway, while the Matthaei automobile came to rest near the point where the two vehicles collided in the inside lane of the inbound side of the highway. Investigating officers found a hole four feet long, one foot wide and six inches deep on the outbound side of the Chef Menteur Highway, running lengthwise along the line dividing these two outbound lanes and within the outside lane. Photographs of the hole, showing it filled with water as a result of rain which had fallen before the accident, demonstrate that it was effectively camouflaged as it had the appearance of a puddle. Because of its proximity to the accident and the direction that Mrs. Matthaei's car took in crossing the neutral ground, the investigators gave this hole some attention and photographed and measured it at the time of their investigation even though they had gotten no statement from Mrs. Matthaei at that point. The hole was over 200 feet from the point of impact.
In considering liability for this accident, we start with the basic premise that as between Mrs. Mistich and Mrs. Wood as opposed to Mrs. Matthaei and Travelers, since there was a collision between the Wood and Matthaei automobiles on Wood's side of the highway, Mrs. Matthaei having crossed over the neutral ground prior to the collision, there is a prima facie *242 case of negligence against Mrs. Matthaei and the burden of proof is on her to explain how the accident occurred without any negligence on her part and/or as a result of the negligence of the Highway Department. Weber v. Aetna Life & Casualty Co., 259 So.2d 628 (La.App. 1st Cir. 1972); Wilson v. Adams, 194 So.2d 343 (La.App. 4th Cir. 1967).
There is a paucity of evidence as to just how or why this accident occurred. Mrs. Matthaei had no passengers in her vehicle and there were no witnesses to her actual loss of control of her car.
Her testimony was that it was dark and raining, she was traveling about 35 miles per hour gradually shifting from the right lane to the left intending to make a left turn at some point farther along the highway when suddenly her car went down into a hole, the steering wheel was jerked from her hand, she was thrown forward and she blacked out. She has no further recollection until she regained consciousness in the hospital the next morning. Her physician found that she had sustained head injuries including a fracture of the nose.
The trial judge included in his judgment the statement that "she is found guilty of negligence" but gave no reasons therefor. The question before us is whether she carried her burden of proof that she was not negligent.
It is not sufficient for her to say simply that her car struck the hole causing her to lose consciousness and control of the automobile whereupon it traveled 200 feet across the neutral ground into the face of oncoming traffic. She must also discount negligence on her part which might have contributed to these events after her car struck the hole. For instance, was she derelict in failing to hold on properly to the steering wheel or in being inattentive to her driving? Did such a factor as these cause her to be thrown about her car after it was jolted by the hole in the highway? While there is no positive evidence of such a failing on her part, there is likewise insufficient evidence to show that such factors were not present. Indeed, she has our sympathy because according to her testimony she cannot recall exactly what happened. But she has the burden of proof and did not, perhaps could not, bear the burden so that she and her insurer are liable to Mrs. Mistich and Mrs. Wood for their damages.
As to the Highway Department, it offered no evidence in its defense and rested on the theory that Mrs. Mattaei failed to prove (1) that there was a defect in the road and that such defect was inherently dangerous, and (2) that the Highway Department had actual or constructive knowledge of the defect. The Department also contends that Mrs. Matthaei was contributorily negligent.
It should be noted at the outset of this discussion that our determination that Mrs. Matthaei did not offer sufficient proof to exculpate herself from negligence in her defense against the claims of Mrs. Mistich and Mrs. Wood is not dispositive of the claims against the Highway Department which is vulnerable on the basis of independent negligence not only to Mrs. Mistich and Mrs. Wood but also to the claim of Mrs. Matthaei against which it has defended on the basis of contributory negligence. If the Highway Department is found negligent, it must bear the burden of proving acts of negligence on Mrs. Matthaei's part in bar of her claims against it, a task quite different than the one originally confronting Mrs. Mistich and Mrs. Wood. Thus, the next question to be considered is whether there was any actionable negligence on the part of the Highway Department in the first instance.
It is clear that the hole was there and that its size and location on this particular highway made it inherently dangerous. The very fact that this serious accident was brought about in part by its presence is in itself proof of these elements. But for the Department to be liable to anyone *243 it must be shown to have had actual or constructive knowledge of the defect. In Dupre v. Louisiana Department of Highways, 154 So.2d 579 (La.App. 3rd Cir. 1963) the following was said:
"The law of this State is settled to the effect that the Department of Highways is not responsible for every accident which may occur on State highways, nor is it a guarantor of the safety of travelers thereon, or an insurer against all injury which may result from obstructions or defects in such highways. The duty of the Department of Highways is only to see that State Highways are reasonably safe for persons exercising ordinary care and reasonable prudence. The Department, however, is liable for damages caused by defects in a highway which are sufficiently dangerous to cause an accident and an injury to a person using the highway in a reasonably prudent manner, if the Department has actual or constructive notice of the defect."
In St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273 (1964) the Supreme Court confronted with a slip and fall case allegedly caused by a defective sidewalk announced the following rule:
"In order to assess liability in a matter such as the instant one, it must be shown (1) that the unsound condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent person, and (2) that the municipality had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it. "In other words, if the defect is slight, there can be no recovery and, even if it is patently dangerous, the municipality is not responsible unless it has had actual notice of it or unless the condition has been permitted to remain in its dangerous state for such a length of time as to warrant the conclusion that the municipality is negligent in failing to discover and correct it.' Parker v. City of New Orleans, La.App., 1 So.2d 123. See, Cobb v. Town of Winnsboro, La. App., 49 So.2d 625; Foster v. Employers Liability Assurance Corporation, Ltd., La.App., 129 So.2d 913; Bond v. City of Baton Rouge, La.App., 129 So.2d 887."
The duty imposed upon the municipality in the cited case is identical to that which is imposed upon the Highway Department in the instant case and by the same token constructive notice does not come into play in this case in the absence of evidence that the defect "has been permitted to remain in its dangerous state for such a length of time as to warrant the conclusion" that the Department was negligent in failing to discover it. Appellants argue that the absence of broken or loose pavement around the hole warrants an inference that the hole had been there for some time, but this argument is not convincing. At best it constitutes speculation, especially since all of the evidence is to the effect that there had been a heavy rainfall shortly before the accident.
To hold adversely to the Department in the instant case would place upon it an intolerable burden. Every time a motorist suffered damage from a pot hole or rut in a road, on a showing that he was not negligent, he could point his finger at the Department and require it to prove when that particular stretch of road was last inspected. While our sympathy is with such a motorist, we must also sympathize with the Department which, as the representative of all citizens, has the responsibility for thousands of miles of roads throughout the State.
Accordingly, we find no actionable negligence on the part of the Highway Department in the instant case.
As to quantum, the trial judge awarded to Mrs. Cynthia Peters Wood the sum of $45,250 which he itemized as follows:
"Injury to right knee with 15% disability $15,000.00, injury to right hip $1,500.00, injury to left ear $2,000.00, injury to long finger left hand $1,000.00, injury to *244 upper lip $1,500.00, injury to head $750.00, injury to nose $2,500.00. Scars: `W' shape scar of right knee $6,000 to left ear $1,500.00, to left finger $500.00. Pain and suffering $15,000.00. Future pain and suffering $3,000.00."
There is no explanation as to why the total of these items is greater than the total amount of the award but in any event Mrs. Matthaei and Travelers complain that the award is excessive while Mrs. Wood complains that the judgment should be amended so as to add the sum of $1,750.00 for future surgical and hospital expenses in connection with the scars sustained by her.
In our consideration of the appropriateness of the award we are guided by the principles that it will not be modified unless we find that the trial judge has abused the "much discretion" given to him in this area and that awards in other cases are not to be used as yardsticks in determining the proper award in this case but should be considered only to the extent that they provide a range for a determination as to whether the trial judge has abused that discretion.
At the time of this accident on September 6, 1967, Cynthia Wood was 17 years of age and single. On August 29, 1970, she became the wife of Chester A. Wood, Jr. She was offered in evidence at the trial of the case and in oral argument before this Court was physically presented to the Court for our observation of the scars which remain from this accident. She is an attractive young woman and the scars on her right knee, left hand and left ear are still readily apparent and clearly disfiguring.
Following the accident she was admitted to Mercy Hospital where she was attended by Dr. Louis Krust and Dr. John F. Nabos.
Dr. Krust found that she had sustained a deep laceration of the right knee, two lacerations of the left hand above the long finger, an open wound at the top of the scalp one and a half inches in length, a laceration through the upper part of the left ear, a laceration of the lower part of the upper lip and a fracture of the tip of her nose. He employed a surgical procedure to repair injuries in her head and on her hand, while Dr. Nabos simultaneously employed a surgical procedure with respect to her knee.
In connection with the knee, Dr. Nabos found that the laceration extended into the joint so that the fracture of the lateral femoral condyle, which is the outside bone forming the knee joint, was visible to his observation. The fracture was reduced, the laceration closed with sutures and a long leg cast was applied. There was no necessity for the use of surgical pins, nails or plates as the reduction of the fracture was accomplished by manipulation. While in the hospital following her operation and until her discharge on September 13 she was confined to bed with her leg elevated. On discharge from the hospital she was advised to perform exercises but was restricted from weight bearing and put on crutches. On September 27 the cast was removed, the stitches were removed and a new long leg cast was applied. On October 18 this new cast was removed. At this time she had developed swelling in the knee and a temperature increase. She was then advised to continue with exercises but was still restricted from weight bearing. She began with partial weight bearing on crutches on November 1 and reached full weight bearing on November 29. By March 20, 1968, Dr. Nabos found that there was limited range of motion and laxity of the ligaments causing instability in the knee. There was also some atrophy of the right thigh which the doctor thought would be temporary. At that time he prescribed no further treatment except to recommend continued exercises. In the early course of his treatment Dr. Nabos also found that she had traumatic neuritis of the hip, a condition which caused her numbness. On March 28, 1969, she was *245 re-evaluated by Dr. Nabos at the request of Travelers, at which time she complained that kneeling on her right knee made it red and tender and that the knee was painful on bending. The scar on her knee was described as three and a quarter inches long and one-quarter inch wide in the general shape of a "W". The doctor summarized her residuals at that time as the scar, a slight laxity of the ligaments, limitation of 10% flexion of the right knee as compared to the left and a general 15% disability of the knee, including the scar. Dr. Nabos stated that she was not disabled as far as normal activities were concerned.
As to the other injuries for which she was treated by Dr. Krust, the laceration to the ear was a "through and through" cut at the top so deep that the cartilage was exposed and it left a "notch" or a jagged scar. There were lacerations on the left hand which damaged the tendon and left a transverse scar over the long finger. The laceration of the lip required suturing and required her to take nourishment only through a straw while she was hospitalized. Treatment of the scalp would required her hair to be shaved "minimally." The fracture of the nasal bone caused displacement of the septum leaving residuals by June, 1971, of a slight lump and a "stuffiness" in the right nasal passage. All of Dr. Krust's treatment of plaintiff was administered while she was in the hospital except for one additional visit in March, 1968. He made an additional examination in June, 1971, to determine the extent of her residual scarring, forming the opinion that corrective work on the ear, the nose and the knee was in order and would require four days hospitalization, dressing and splints on the nose for 10 days, follow-up on the knee for 30 days, at a projected cost of $1,750.00. Without such further treatment the doctor did not feel that there would be any further improvement in the appearance of these scars.
Mrs. Wood testified that her stay in the hospital was painful and uncomfortable. She was bedridden at her home for two months following her discharge from the hospital unable to sleep for the first two weeks. She was required to use a wheel chair and for two or three weeks after being able to get out of bed had to use crutches. Scars on her knee and ear were painful two or three weeks after she left the hospital. She suffered the numbness in her hip for three months. The exercises she took for her knee were painful, and by the time of the trial her ear was still sensitive to touch as in the case when she brushed her hair, the middle finger scar was sensitive to touch and she was still having trouble with her knee. Upon going to Church and kneeling she still suffers pain and bruising for two or three days thereafter. She testified that she was self-conscious about the scars on her ear and her knee and has the stuffy feeling in her nose as though she were suffering with a cold.
There is no question but that Mrs. Wood has suffered extensively as a result of the accident, having been rendered disabled for a considerable length of time. We can well understand having viewed the plaintiff that she is necessarily and justifiably self-conscious and troubled about the scar on her knee and the jagged scar at the top of her ear which, by her own testimony, restricts the manner in which she wears her hair.
Her counsel has meticulously analyzed the trial judge's award and cited a number of cases to support almost each and every element of the award, presenting a persuasive argument that when each one of these elements is considered separately the sum total of the individual elements is not outside of the range of the trial judge's discretion. Except for the scar on the knee, we agree that each one of these scars is a matter of individual consideration and we do not find any abuse of discretion on the part of the trial judge in his awards for any of these injuries but some difficulty is presented with respect to the *246 awards of $15,000 for the injury to the right knee, $6,000 for the scar on the right knee, $15,000 for pain and suffering and $3,000 for future pain and suffering. In the first place, these items seem to be repetitious of one another to some extent on their face since general damage awards normally contemplate that pain and suffering are included. But what is more important is the fact that Dr. Nabos testified that the 15% disability rating which he assigned to the girl's right knee included the problem she has with the scar and an analysis of his testimony leads to the conclusion that any disability she has in that knee is primarily the direct result of the scar and is not an orthopedic disability.
We have examined the cases cited by counsel for the plaintiff in this connection, including Laird v. Travelers Insurance Company, 251 So.2d 73, La.App.3rd Cir. 1971, and Roach v. Firemen's Fund Insurance Company, 225 So.2d 295, La. App.4th Cir. 1969. We have examined the cases cited by Travelers, including Reed v. Great American Insurance Company, 242 So.2d 6, La.App.3rd Cir. 1970, and Serigny v. Thibodaux, 199 So.2d 546, La. App.4th Cir. 1967. We have also examined cases such as Herrin v. Perry, 215 So.2d 177, La.App.3rd Cir. 1968, affirmed by the Supreme Court at 254 La. 933, 228 So.2d 649; Odom v. Texas Farm Products Company, 229 So.2d 118, La.App.2nd Cir. 1969; Veal v. Hotard, 256 So.2d 327, La. App.1st Cir. 1971; Adams v. Employers Liability Assurance Corporation, 232 So.2d 311, La.App.3rd Cir. 1969; and Suire v. Patin's Tire Service, Inc., 251 So.2d 182, La.App.3rd Cir. 1971; and from our examination of these cases, especially in the light of the seeming repetition with respect to the right knee and the pain and suffering, we conclude that the award of the trial judge is excessive. Upon adding the individual items included in the judgment it seems that the trial judge intended to award $50,250.00. That figure is reduced to $35,250.00 to include mental anguish, pain and suffering, present, past and future disability and disfigurement.
On the other hand, we are convinced that Mrs. Wood is entitled to an additional sum of $1,750 for the surgical and hospital expense in connection with the revision of the scars to her right knee and left ear and the injury to her nose, so that the award will be amended to the sum of $37,000.00.
As to the judgment in favor of Mrs. Mistich, the Court correctly awarded the sum of $1,390.35.
Accordingly, the judgment in the case of Margaret Matthaei v. Louisiana Department of Highways and/or State of Louisiana is affirmed at the cost of the plaintiff, Mrs. Margaret Matthaei.
The judgment in the case of Mrs. Elton M. Mistich, Sr. for the minor Cynthia D. Peters v. Margaret E. Matthaei, The Travelers Insurance Co. and the City of New Orleans, et al., is amended and affirmed so that
It is ordered, adjudged and decreed that there be judgment in favor of Mrs. Elton M. Mistich, Sr. and against Margaret E. Matthaei and The Travelers Insurance Co. jointly and in solido in the full and true sum of $1,390.35 with legal interest from date of judicial demand and costs, and
It is further ordered, adjudged and decreed that there be judgment in favor of Mrs. Cynthia D. Peters Wood and against defendants Margaret E. Matthaei and The Travelers Insurance Company in the full and true sum of $37,000.00 with legal interest from date of judicial demand until paid and for all costs.
The judgment insofar as the suit of Mrs. Elton M. Mistich, Sr. and Mrs. Cynthia D. Peters Wood was dismissed as against the City of New Orleans and the Louisiana Department of Highways is affirmed.
Amended and affirmed.