311 So.2d 36 (1975)
Ronald H. SPRINGER and Terry C. Oltmann
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY, INC., and Armond M. Traylor.
No. 6586.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 1975.
Rehearing Denied April 15, 1975.
Writ Refused June 13, 1975.
*37 Thomas L. Giraud, New Orleans, for plaintiffs-appellees.
Hammett, Leake, Hammett, Hayne & Hulse, Michael E. Wanek, New Orleans, for defendants-appellants, Government Employees Ins. Co., Inc. and Armond M. Traylor.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, R. Henry Sarpy, Jr., New Orleans, for defendants-appellees, The Travelers Ins. Co.
Before REDMANN, GULOTTA, BOUTALL, SCHOTT and BEER, JJ.
Before REDMANN, GULOTTA, BOUTALL, SCHOTT and BEER, JJ.
BEER, Judge.
Suit was brought by Ronald H. Springer, the owner-driver of an automobile, and Terry C. Oltmann, passenger therein, for personal injuries and damages as a result of a collision with a vehicle operated by Armond M. Traylor and insured by Government Employees Insurance Company, Inc. Subsequently, Travelers Insurance Company, the carrier of plaintiff's uninsured motorist coverage, was made a party defendant. From a judgment in favor of plaintiffs and against Traylor, and Government Employees Insurance Company, Inc., and a dismissal of plaintiffs' claim against Travelers, several appeals have been taken.
The record discloses a series of events, all taking place at high speeds, which resulted *38 in a head-on collision between the Springer and Traylor automobiles in Springer's lane of traffic on a divided four-lane highway. The trial judge gave judgment against Traylor. We reverse.
Under these factual circumstances, the trial judge correctly determined that Traylor was burdened with the obligation to exculpate himself from blame by affirmatively showing himself to be free from fault. In adopting this position the trial court had ample basis for it has been often stated that:
"A motorist who is involved in a collision in the wrong lane must absolve himself from negligence by a clear preponderance of the evidence; that is, inasmuch as he was in the wrong lane of traffic at the time of the accident, he is presumed to have been negligent and bears the burden of establishing that he was without fault or that there were circumstances which justified his conduct."
See: Coleman v. Ross, 232 So.2d 885 (La.App. 2nd Cir. 1970); Wishom v. Ford Motor Company, 256 So.2d 298 (La.App. 1st Cir. 1971); Mistich v. Matthaei, 277 So.2d 239 (La.App. 4th Cir. 1973); Bauer v. Bauer, 211 So.2d 375 (La.App. 1st Cir. 1968); Lewis v. Travelers Insurance Company, 247 So.2d 635 (La.App. 3rd Cir. 1971).
However, we conclude that Traylor carried the burden properly thrust upon him. He and the independent eyewitnesses who testified in his behalf give creditable accounts of the incidents which, compressed into the time sequence and the physical factors existent at the critical moment, sufficiently explain the mechanics of the crash.
Traylor was heading east on Highway 90 on his way to work. Traffic was medium to heavy. He was proceeding in the "inside" lanenext to the medianat a speed between 55 and 60 miles per hour.
The median is at this point about 5 feet wide with curbing.
A vehicle passed him on his right at high speed, cut diagonally in front of him at the moment he caught his first glimpse of it in juxtaposition with his automobile and the one just ahead of him and to his right in the "outside" lane.
Confronted with a sudden emergency not caused by his own actions, he braked his automobile and moved close to the curb of the median. His car was then struck by the car that cut diagonally in front of him and that impact was enough to cause his car to strike the median curbing. At the speed previously described, the Traylor car, now verging on being out of control, apparently went up on to the median and either at that moment or in the next moment the front tire or tires blew out. At that point the Traylor car wasfor all intents and purposesout of control. In this status, it crossed the "inside" west-heading lane of Highway 90 and struck the Springer automobile head-on in the "outside" west-heading lane of traffic.
There is little doubt that the hit-and-run vehicle previously described did hit the Traylor automobile. Independent witness Cancienne describes the impact between the vehicles and recalls that a piece of chrome came off the Traylor vehicle at impact. He saw it when it came off and when it hit the ground and testified that "it was still in the roadway after the accident on the opposite side of the road from where the Buick (Traylor) hit the Fairlane (Springer)."
Independent witness Mrs. Phillips saw the hit-and-run vehicle "weaving in and out" of traffic "like rick rack." She saw that car cut in front of Traylor and saw Traylor's car as it apparently went out of controlafter being just missed or struck [she did not see the actual striking] by the hit-and-run vehicle.
Independent witness Theriot saw the hit-and-run vehicle cut sharply in front of *39 Traylor but can only say that it either hit him or came very close to doing so.
All witnesses confirm the fact that the sequence of events that let directly to the head-on collision began with the swerving action of the hit-and-run vehicle. There is no contrary testimony. Nor is there any refutation of that portion of the evidence that shows an actual collision between the hit-and-run vehicle and Traylor's automobile.
We believe that the mechanism of this accident went into operation at the moment the hit-and-run vehicle swerved into the path of the Traylor automobile and struck it and ended when Traylor struck Springer in Springer's lane of traffic. All this happened in the few seconds that intervened and in a climate of sudden emergency. There is nothing before us to indicate that Traylorthus confrontedacted improperly under the circumstances. He fought for control but the physical factors existent after the left tire blew and the left wheel "bursted" could not be overcome.
Starting with the presumption that, under the circumstances, Traylor must be presumed negligent, we believe that he has rebutted the presumption by a preponderance of the evidence and borne the burden of establishing that he was without fault even though his reactions during the sudden emergency may not have been exactly those of a man with unsurpassed experience in coping with unforeseen circumstances calling for immediate action.
Having determined that Traylor was not negligent, we must give consideration to the claims by Springer and Oltmann against Travelers Insurance Company, the uninsured motorist insurer of the Springer automobile.
The facts show that plaintiffs were painfully injured as the result of the negligence of a hit-and-run driver. The physical contact between the hit-and-run vehicle and the Traylor vehicle was the sole, direct and proximate cause of the collision between the Traylor vehicle and the Springer vehicle. Thus, we are confronted with a situation where this court must make a determination with respect to the applicability, under these specific circumstances, of the uninsured motorist coverage provisions of the Travelers Insurance Company policy insuring the Springer vehicle.
The policy of insurance issued by The Travelers Indemnity Company provides as follows:
"Definitions

* * * * * *
"`[H]it-and-run vehicle' means a highway vehicle which causes bodily injury to the insured arising out of physical contact of such vehicle with the insured or with an automobile which the insured is occupying at the time of the accident, provided: (a) there cannot be ascertained the identity of either the operator or the owner of such `hit-and-run vehicle'; (b) the insured or someone on his behalf shall have reported the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles, and shall have filed with the company within 30 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and (c) at the company's request, the insured or his legal representative makes available for inspection the automobile which the insured was occupying at the time of the accident." (Emphasis added.)
We hold that the "physical contact of such vehicle" includes the physical contact of that vehicle with an intermediate vehicle or other object which, in the same mechanism of the accident, strikes the assured's vehicle. We limit this to the type of factual situation existent here. Specifically, the injury causing impact must *40 have a complete, proximate, direct and timely relationship with the first impact between the hit-and-run vehicle and the intermediate vehicle. In effect, the impact must be the result of an unbroken chain of events with a clearly definable beginning and ending, occurring in a continuous sequence.
As stated by the Michigan Court of Appeals in Lord v. Auto Owners Insurance Company, 22 Mich.App. 669, 177 N.W.2d 653, (1970):
"It is clear that ever since the time of Sir Isaac Newton man has recognized and lived by certain physical laws of impact and motion. Accordingly, we hold, as did the Federal Court of Appeals for the Fifth Circuit (applying Florida law) in the case of State Farm Mutual Automobile Insurance Company v. Spinola (CA5, 1967), 374 F.2d 873, that an insured party is covered where the impact of the hit-and-run car was transmitted to his car through an intermediate car. We find, as did Sir Isaac, that this acceptance of a fundamental property of natural phenomena is the more sensible and consistent view as regards transfer of impact through intermediate objects."
In this connection, see also Inter-Insurance Exchange of the Automobile Club of Southern California v. Lopez, 238 Cal. App.2d 441, 47 Cal.Rptr. 834 (1966) and Uninsured Motorist Indorsement: Validity and Construction of Requirement That There Be "Physical Contact" With Unidentified or Hit-And-Run Vehicle, 25 ALR 3rd 1299, particularly Sec. 3[b] at p. 1304.
The applicable provisions of the policy of insurance issued by Travelers Insurance Company to Springer provide coverage in the basic amount as provided by the statute ($5,000/$10,000). See joint exhibit marked "P-4" which is Policy Number XXXXXXXXXXXX 1 of The Travelers Indemnity Company. The claims of Springer and Oltmann against Travelers, Springer's uninsured motorist insurer, were preserved insofar as this proceeding is concerned by the devolutive appeal filed on June 7, 1974.
The judgment appealed from is reversed. The claim by Ronald H. Springer and Terry C. Oltmann against Travelers Insurance Company, the uninsured motorist insurer of the Springer vehicle will be allowed in the amount of $3,000.00 in favor of Terry C. Oltmann and $5,000.00 in favor of Ronald H. Springer, plus interest from date of judicial demand. The costs of this appeal to be paid by Travelers Insurance Company.
Reversed and rendered.
BOUTALL, Judge (dissenting in part and concurring in part).
The automobile driven by the defendant, Traylor, was proceeding in the inside lane of Highway 90, left that lane, crossed the dividing median, crossed the first lane of opposing traffic and ran headon into plaintiff's vehicle which was proceeding in the outside lane. After trial, the trial court found that the plaintiff driver Springer was wholly without fault, that under the case of Mull v. Burkhardt, 252 So.2d 475 (La.App. 4th Cir. 1971) the fact of the collision imposed upon the operator of the offending automobile the burden of explaining away the strong presumption of negligence against him, and after considering and studying the evidence, concluded that the defendant Traylor had not satisfactorily carried this burden. With this conclusion I agree.
In the case of Mistich v. Matthaei, 277 So.2d 239 (La.App. 4th Cir. 1973) wherein we had posed before us the similar question of a vehicle leaving its lane of travel, crossing the median and striking another vehicle proceeding in the opposite direction in its proper lane of travel, we held that such facts constitute a prima facie case of negligence against the offending driver and the burden of proof is on that driver to explain how the accident occurred without any negligence on her part. The evidence *41 necessary to carry this burden of proof must be clear and convincing. Lewis v. Travelers Insurance Company, 247 So.2d 635 (La.App. 3rd Cir. 1971).
The defendant's contention, and he so testifies, is that he was proceeding eastbound in his left hand lane with a truck some 20 to 25 feet on a diagonal line in front of him in the right hand lane, when suddenly an unidentified white vehicle sought to pass from the right lane, cutting between the truck and his own vehicle, and this vehicle struck defendant's vehicle sending him out of control across the highway. He testified that when he saw the vehicle making this dangerous maneuver, he moved his vehicle as close to the median as possible, to within some 4 or 5 inches, and slowed his vehicle down. When he was struck his front was moved against the curb of the median, his car jumped the median, blew a tire out and went into the opposite lane of traffic. In support of his contention he produces three witnesses occupying vehicles behind him.
While these three witnesses do testify as to an unidentified vehicle cutting in front of defendant's car, their testimony, taken as a whole, does not substantiate the particular activities described by defendant. In summary only one of them testifies as to an actual collision between the defendant vehicle and the unidentified vehicle. The other two witnesses were not able to say that there was a collision, and a State Trooper who testified, stated that the defendant told him there was no collision. The testimony concerning the collision shows that it was very light, and any physical evidence of it would have been obliterated by the resulting headon crash. The trial judge did not make a finding as to whether or not there was a collision.
I think it more significant that all of the witnesses produced failed to corroborate defendant Traylor's testimony that he slowed his vehicle down and moved it right up against the median before the collision. None of the witnesses noticed him slowing down, and indeed they placed him much further away from the median than he testified. The height of the median at this point is 10 inches high by Traylor's testimony and even considering the slight collision to have actually taken place, I find it difficult to conclude that Traylor's vehicle would have taken the course it did, unless he lost control at the time of his involvement with the unidentified vehicle. Concededly his actions cannot be examined with the eye of an ordinarily prudent person who has time to cooly reflect upon a proper course of action. The evidence simply does not support the course of action that Traylor says he took. Reasonable minds may differ as to a proper course of action but this court is under an obligation not to substitute its conclusion for that of the trial judge, unless his conclusions and findings of fact are manifestly erroneous. See Canter v. Koehring Company, 283 So. 2d 716 (La.1973). My evaluation of the evidence is that, taken as a whole, it does not support the contentions of the defendant so as to clearly show that he was free from negligence in this headon collision, and I find no manifest error in the trial Judge's conclusion to that effect.
I therefore respectfully dissent and would affirm the ruling of the trial court. In this posture there is no necessity to rule upon the liability of the uninsured motorist insurance carrier. However, since the majority opinion reverses that of the trial court, under the facts found by the majority opinion I concur in that portion of the judgment which assesses liability against the uninsured motorist insurance carrier.
SCHOTT, Judge (dissenting).
I concur that Armond M. Traylor was not negligent so that the judgment in favor of plaintiffs and against Traylor and his insurer should be reversed, but I dissent with respect to the liability of Travelers Insurance Company under the uninsured motorist (UM) provisions of its policy.
While the majority opinion quotes the policy which restricts hit-and-run coverage *42 to the situation where there is "physical contact of [the hit-and-run] vehicle with the insured or with an automobile" occupied by the insured, they then conclude that these words mean something they do not say. They do so without basis in the law or jurisprudence.
In Collins v. New Orleans Public Service, Inc., 234 So.2d 270 (La.App. 4th Cir. 1970), writ refused, 256 La. 375, 236 So.2d 503, this Court was confronted with a UM claim where there was no physical contact between a hit-and-run vehicle and a bus occupied by Mrs. Collins. She and her husband contended that 1) the physical contact requirement was invalid because it went beyond the provisions of the law and 2) a literal application of the physical contact requirement leads to absurd consequences. The Court disposed of the first contention as follows:
"Thus, in connection with the matter under discussion there is no conflict between the policy provisions and the statute. The hit-and-run policy provisions do go beyond the statute in that under the latter alone the insured in every instance bears the burden of proving the uninsured automobile was in fact uninsured, while the policy provisions dispense with the necessity of such proof by the insured when there is physical contact as defined and the identity of the operator or owner cannot be ascertained. To the extent that the hit-and-run provisions go beyond the statute they are to the advantage of the insured. And since those provisions are neither required nor prohibited by the statute, the parties to the insurance contract were free to limit or restrict them in any manner they saw fit."
Addressing itself to plaintiffs' second contention the Court acknowledged the argument that the requirement for physical contact is intended to prevent false claims, not to lessen coverage, and should not be extended to defeat recovery where fraud clearly does not exist. The Court recognized that they were not confronted with a fraudulent claim, but they nevertheless applied the language of the policy and held:
"Whatever may have been the intent of the parties to the insurance contract, the words used are clear and explicit and lead to no absurd consequences. In the absence of physical contact they simply require proof by the plaintiffs that the Mustang was in fact an uninsured automobile. As the plaintiffs have offered no such proof they cannot recover under the `hit-and-run automobile' provisions of the policy."
The same conclusion follows with respect to the instant case. LSA-R.S. 22:1406 requires that liability insurance policies contain UM coverage unless specifically rejected by the insured. Nowhere does the statute relieve the insured of the burden of proving that the offending motorist was uninsured although the statute was recently amended to provide a mechanical method for the insured to prove the uninsured status of an offender whose identity is known to the insured. Nowhere does the statute require that liability policies contain UM coverage with respect to unidentified drivers or hit-and-run drivers. Therefore, the hit-and-run coverage is in the Travelers' policy not because Travelers was required to include it but because it was voluntarily and freely contracted for. The limitation on such coverage is that there be physical contact between the hit-and-run vehicle and the insured or the automobile which the insured is occupying. These words are clear and unambiguous. They do not cover the facts before us where the hit-and-run vehicle had physical contact with an intermediate automobile which in turn struck the automobile which the insureds were occupying.
While the foregoing analysis seems to support the result in the Collins case and my own conclusion in the instant case, the thrust of my dissent is that the majority view is inconsistent with the result and the rationale of the Collins case, and for that *43 reason Collins should be either followed or overruled. It cannot be ignored.
Collins was specifically and effectively criticized in Webb v. United Services Automobile Ass'n, 227 Pa.Super, 508, 323 A.2d 737 (1974), where it was held that the physical contact requirement was void and unenforceable because it was contrary to the Pennsylvania UM statute and where that statute was similar to our own R.S. 22:1406. The Collins case followed Roloff v. Liberty Mutual Insurance Co., 191 So.2d 901 (La.App. 4th Cir. 1966), which was likewise criticized in a comment at LXII T.L.R. 365.
On the other hand it is said in the annotation at 25 ALR 3rd 1299 at page 1306 that courts have generally held the physical contact requirements to be valid. This same result was likewise reached by divided courts in Ferega v. State Farm Mutual Automobile Ins. Co., 15 Ill.App.3rd 246, 303 N.E.2d 459 (1973) and Buckeye Union Ins. Co. v. Cooperman, 33 Ohio App.2d 152, 293 N.E.2d 293 (1972).
The majority relies in part on Lord v. Auto-Owners Insurance Company, 22 Mich. 669, 177 N.W.2d 653 (1970), and certainly the language quoted from that case makes much sense. But the Court there rationalized the result primarily on the theory that when the Michigan Court is asked to construe the provision of an insurance contract it "will read the policy in such a manner as favors coverage for the insured." The Court then went on to hold that the policy did not mean what it said. This is precisely what we declined to do in Collins and Roloff but which the majority does in the instant case.
The other case cited by the majority and a leading case on this subject, Inter-Ins. Exchange of Auto. Club v. Lopez, (1965) 238 Cal.App.2d 441, 47 Cal.Rptr. 834, is distinguishable for the reason that the California statute, 43 Cal.Code20 § 11580.2, defines an uninsured motor vehicle as one whose owner or operator is unknown, although the statute provides that for coverage to apply the bodily injury must arise out of physical contact of such automobile with the insured or with the automobile occupied by the insured. When the Lopez court decided that intermediate contact was sufficient to satisfy the physical contact requirements they were not merely interpreting an insurance contract. They had to determine whether the legislature intended the coverage to extend to the facts of that case. There was a sound basis for a liberal interpretation of the statutory requirement in favor of the insured-beneficiary of the statute but the same approach is not warranted in our case where the risk of hit-and-run coverage, albeit restricted by the physical contact provisions, is voluntarily assumed by the company.
In New York and South Carolina also where the statutes require coverage for hit-and-run motorists the same result was reached as in the Lopez case. See Motor Vehicle Acci. Indemnification Corp. v. Eisenberg (1966) 18 N.Y.2d 1, 271 N.Y.S.2d 641, 218 N.E.2d 524 and Louthian v. State Farm Mutual Insurance Company, 357 F.Supp. 894 (D.S.C.1973) where the Federal District Court applied the law of South Carolina.
I am aware that Latham v. Mountain States Mutual Casualty Co., 482 S.W.2d 665 (Tex.Civ.App.1972), and State Farm Mutual Automobile Insurance Company v. Spinola, 374 F.2d 873 (5th Cir. 1967), interpreting Florida law, came to the same conclusion as did the majority in the instant case although in neither of these states is there a statutory requirement that hit-and-run coverage be included in UM coverage. But in each of these cases the question now before us was considered to be one of first impression in that state and the Lopez and Eisenberg cases were cited as authorities in each case. But in neither of these cases, nor in Lord, did the Court consider the distinction which I find to exist between the instant case and Lopez and which I find implicit in the quoted language from Collins v. New Orleans Public Service, Inc., supra.
I respectfully dissent.

*44 ON APPLICATION FOR REHEARING
PER CURIAM.
Applying for rehearing, the uninsured motorist insurer and both plaintiffs argue that our decision conflicts with this court's Collins v. New Orleans Pub. Serv., Inc., La.App.1970, 234 So.2d 270.
Collins was a miss-and-run case. The exclusion of miss-and-run drivers is justifiable because miss-and-run is too fraud-fraught: every driver who falls asleep or otherwise loses control and injures himself in a one-car accident could blame a non-existent miss-and-run driver and collect under his uninsured motorist coverage.
Ours is a hit-and-run casein which, however, the policy-specified "physical contact" was through an intermediate object (the Traylor car). Yet "physical contact. . . with the insured" certainly does occur in the usual case of a clothed insured, although the vehicle's contact is rather with the clothing than with the insured. Similarly, if we suppose a vehicle carrying a telephone pole which extends forward of the vehicle itself, and further suppose that by that vehicle's driver's fault the pole strikes an insured's car, would we say there was no "physical contact" with the hit-and-run vehicle, within the policy's meaning, because only the pole struck? What then, if the insured is standing next to an erect telephone pole, which is knocked over onto the insured by a hit-and-run vehicle? Why would we not say, that, just as the insured's clothes do not negate "physical contact," the pole by its intermediateness does not negate "physical contact"?
In considering the purpose of the "physical contact" specification of the policy, one must reject the concept that "hit-and-run" coverage in Louisiana is purely a voluntary addition by insurers to the statute's requirement. The inference that one who hits and runs is uninsured, especially when further supported by circumstances such as the old age and unkept condition of his car, is not an unreasonable one. An insured driver ordinarily has less reason to flee the scene of an accident than has an uninsured driver (although even an insured driver might flee to avoid serious problems such as drunk driving charges, or discovery with another's spouse). Thus the underwriter avoided a coverage question by specifying coverage of hit-and-run, while excluding the wide-open miss-and-run case. The evidence purpose of "physical contact" is to exclude miss-and-run cases. "Physical contact" should not be interpreted to exclude coverage of clothed insureds whose clothes are struck by the hit-and-run car, nor of insureds in automobiles struck by a telephone pole or another car or any other object knocked into the insured's car by a hit-and-run vehicle.
We therefore reject the applications for rehearing of the basic coverage question.
However, plaintiff Oltmann additionally calls our attention to an oversight in the majority opinion with respect to the amount of his award. He is correct. His award should have been affirmed in the amount rendered by the trial court.
Accordingly, our decree is amended to grant judgment in favor of Terry C. Oltmann and against Travelers Insurance Company in the amount of $3,423.98.
SCHOTT, J., concurs in refusal of rehearing only.
BOUTALL, J., dissents.
BOUTALL, J., is of the opinion that rehearing should be granted for the reasons assigned in his dissenting opinion.