597 So.2d 1168 (1992)
Alfred D. PINKNEY[1]
v.
PROGRESSIVE SPECIALTY INSURANCE COMPANY.
No. CA 91 0301.
Court of Appeal of Louisiana, First Circuit.
April 10, 1992.
Allan Schwartzberg, Baton Rouge, for plaintiff-appellee Alfred Pinkney.
William Kaufman, III, Baton Rouge, for defendant-appellant Progressive Specialty Ins. Co.
Before COVINGTON, C.J., and LeBLANC and WHIPPLE, JJ.
COVINGTON, Chief Judge.
Defendant Progressive Specialty Insurance Company, plaintiff's own uninsured motorist carrier, appeals the judgment of the district court against it which held Progressive liable to the plaintiff for the limits *1169 of its UM policy, $10,000.00, together with interest and costs, in plaintiff's suit for his injuries following a motorcycle accident. For the following reasons, we affirm the judgment of the district court.
The parties stipulated at trial as to causation and damages, so that the only issue before the court was the legal question of whether coverage existed under the terms of the policy. On September 9, 1988, plaintiff Alfred D. Pinkney, Sr., was traveling northbound on I-110 in Baton Rouge on a 1983 Honda motorcycle. As he approached the area approximately one-half mile south of the Chippewa exit in the middle of the three lanes, the vehicle immediately in front of him swerved to avoid an obstacle in the road which plaintiff had been unable to see until then. This obstacle was described by a disinterested witness to the accident as a log approximately four feet long, and eight to ten inches in diameter. Mr. Pinkney attempted to avoid it, but was unable to prevent the crash bar on the front of his motorcycle from hitting it. Both he and the motorcycle became airborne, and on landing, he suffered various injuries, including a fractured right distal radius which required surgery.
At trial, plaintiff presented the testimony of Harold G. Routon, who had been proceeding in his own vehicle northbound at the time of the accident and was apparently the second vehicle behind the plaintiff in the middle lane of I-110. Mr. Routon testified that the first thing he noticed about the incident was the airborne Mr. Pinkney and his motorcycle, which Mr. Routon perceived above the top of the delivery truck that had been traveling between plaintiff and his own vehicle. After taking evasive action to avoid hitting anyone or anything else, he then saw the log in the roadway; the log was still rolling.
Mr. Routon stated in response to questioning that he remembered seeing a truck that was probably several hundred yards ahead of Mr. Pinkney; he described the truck as a stake body type and said that it was carrying something that he could not really see, but which was piled above the body, "... what I guess I would call a trash truck." Mr. Routon testified that he did not see any vehicles take any evasive moves at any time ahead of the trash truck, but admitted that he would not have seen that anyway because he was just coming around the curve and going uphill. However, he testified that traffic seemed to be flowing without any problems up to that point. He also testified that it would have caused damage to his vehicle to have struck this log, and that he felt it could have caused him to have an accident. After giving his statement to the investigating officer, Mr. Routon went back to the point where he had seen the log with the officer to show it to him, but it was gone and there was only some bark in the road.
Officer Lawrence Junda, III, of the Baton Rouge City Police testified as the investigating officer of the accident. He described that portion of the interstate as elevated, with three lanes each running north and south and no overhanging trees. He testified that the only method of pedestrian access to that area would be for someone to walk up the exit ramp at Chippewa roughly one-half mile away. Officer Junda stated that he arrived at the scene approximately five minutes after receiving the call, and was unable to find the log after the incident, although he found particles of wood about the center lane, which were scattered in a northerly direction, at the point of collision.
The trial judge found that there was coverage under the terms of the policy, based on the following findings:
In this case we have daylight on an elevated interstate with no walkways. There is no area above it where somebody can drop something on it, no trees overhanging it. The nearest access is half a mile away requiring a pedestrian to walk with a four-foot log ten inches in diameter half a mile the wrong way on the interstate without being observed in what is the second busiest area in Baton Rouge. The ten-twelve split probably being the most busy.
We have two people who did not know the plaintiff. A business man, who observed the motorcycle shortly after the *1170 contact, saw the log in the rode [sic]. The police officer found debris from a log which appeared to have been hit in the approximate place where the plaintiff said the contact occurred.
The court finds that more probably than not the log fell from a vehicle. A reasonably short time later, it was hit by this motorcycle. I don't think more than two hours could have passed without somebody calling that in as busy as that section of interstate is and as frequent as we have car phones and CB radios. Debris sits on the interstate a very short period of time these days.
If the Court of Appeal insists on maintaining the exclusion of reasonable hypotheses, Mr. Schwartzberg has eliminated the possibility of a pedestrian because the distance from the on ramp, the elevation of interstate, no trees over the interstate, and other than an airplane dropping something on this interstate, which is not a reasonable hypothesis, there is no other reasonable hypothesis than that it fell from a motor vehicle and so there was physical contact between the motor vehicle and the plaintiff.
On appeal, defendant-appellant Progressive Insurance Company argues that collision with something on a roadway that could have arguably fallen from a motor vehicle is not in and of itself sufficient to satisfy the "physical contact" requirement for coverage under a UM indorsement of an automobile or motorcycle insurance policy. It cites the cases of Chapman v. State of Louisiana, Through the Department of Transportation and Development, 517 So.2d 331 (La.App. 1st Cir.1987), writ denied, 518 So.2d 511 (La.1988), and Harrison v. Commercial Union Insurance Company, 471 So.2d 922 (La.App.2d Cir. 1985) in support of its argument.
Plaintiff contends that the cases of Fore v. The Travelers Insurance Co., 528 So.2d 1091 (La.App. 4th Cir.1988), and Springer v. Government Employees Insurance Company, Inc., 311 So.2d 36 (La.App. 4th Cir.), writs denied, 313 So.2d 598 (La.1975), should control in this instance. In Fore, a motorist was allowed to recover from his UM carrier when a truck in front of him dropped some of its load of dirt directly onto the windshield and hood of his car and he consequently lost control of his vehicle. The court there held that the physical contact requirement was satisfied by contact with an intermediate object, the load of dirt.
The earlier Springer case involved an "unknown" vehicle, which struck the defendant's vehicle, causing it to go out of control and strike the plaintiff's vehicle. Independent witnesses verified the mechanism of the accident. The court there held that the physical contact requirement between the plaintiff's vehicle and the uninsured vehicle was satisfied by the contact with the intermediate defendant's vehicle. However, the court cautioned:
We limit this to the type of factual situation existent here. Specifically, the injury causing impact must have a complete, proximate, direct and timely relationship with the first impact between the hit-and-run vehicle and the intermediate vehicle. In effect, the impact must be the result of an unbroken chain of events with a clearly definable beginning and ending, occurring in a continuous sequence.
311 So.2d at 39-40.
The language of the policy herein provides in pertinent part as follows:
Uninsured motor vehicle means a land motor vehicle or trailer of any type:
1. To which no bodily injury liability bond or policy applies.
2. Which is a hit and run vehicle whose operator or owner cannot be identified and which hits:
. . . . .
c. your cycle, ...
Hit and Run Motor Vehicle means a motor vehicle causing bodily injury to you or any relative after physical contact of such a motor vehicle with your cycle when you or any relative is occupying your cycle providing:
1. The identity of either the operator or owner of such vehicle is unknown.
[Emphasis original.]
*1171 In Chapman, this court affirmed a summary judgment dismissing a UM insurer from a suit for injuries sustained by a motorist and her children when she struck a sixty-foot long pile of sugarcane lying in a rural highway and lost control of her vehicle. The policy in question contained a similar requirement that there be physical contact between the insured person and/or the vehicle he occupied and the uninsured vehicle, also defined there as a "hit-and-run" motor vehicle. In rejecting plaintiffs' arguments that the physical contact requirement was met by the contact between the uninsured vehicle's cargo, the sugarcane, and the plaintiffs' vehicle, we stated:
In support of their position, plaintiffs rely on Ray v. DeMaggio, 313 So.2d 251 (La.App. 4th Cir.1975) and Springer v. Government Employees Ins. Co., Inc., 311 So.2d 36 (La.App. 4th Cir.), writ denied, 313 So.2d 598 (1975). The court in these cases seemed to relax the physical contact requirement in situations where there was physical contact between the hit-and-run vehicle and an intermediate vehicle which began a chain of events culminating in a collision between the insured's vehicle and the intermediate vehicle. In Ray and Springer, the Fourth Circuit concluded the physical contact requirement was satisfied because the collision of the insured's vehicle resulted from an unbroken chain of events occurring in a continuous sequence with a clear beginning and ending. Without expressing any opinion on this issue, we note that, even if this Court subscribed to the Fourth Circuit's rationale, plaintiffs still would not prevail. Although the collision was clearly the last in a sequence of events, nothing is known about what transpired prior to the collision. There is no basis for concluding the collision was the culmination of an unbroken chain of events occurring in a continuous sequence.
517 So.2d at 332.
In Harrison v. Commercial Union Insurance Company, which this court also cited in Chapman, our brethren in the Second Circuit likewise concluded that there was no coverage under the provisions of a motorist's UM policy when the plaintiff's vehicle struck several bags of phosphate lying in the middle of Interstate 20 near Shreveport, Louisiana. The court noted that the purpose of the physical contact rule was to prevent fraudulent claims in which the insured claimed that the one-car accident was caused by a phantom vehicle, and recognized that the actual contact requirement has been somewhat relaxed by the jurisprudence, citing Ray v. DeMaggio, 313 So.2d 251 (La.App. 4th Cir.1975), and Springer v. Government Employees Insurance Company, as we did in Chapman. The court nevertheless found that there was no showing by the plaintiffs of a "chain of events" situation, such as was found in both Ray[2] and Springer. See, 471 So.2d at 924.
However, in the case sub judice, there are two additional factors present, not present in the prior cases, which require a different conclusion. The first of these is that subsequent to the decisions cited above, the legislature has twice amended the relevant statute on uninsured motorist coverage to provide for mandatory coverage in situations in which there has been no actual physical contact between the uninsured vehicle and the injured party or his vehicle. The most recent of these amendments, Act 806 of 1991, amended LSA-R.S. 22:1406(D)(1)(f) to provide as follows:
D. The following provisions shall govern the issuance of uninsured motorist coverage in this state:
(1)
* * * * * *
(f) Uninsured motorist coverage shall include coverage for bodily injury arising out of a motor vehicle accident caused by an automobile which has no physical contact *1172 with the injured party or with a vehicle which the injured party is occupying at the time of the accident, provided that the injured party bears the burden of proving, by an independent and disinterested witness, that the injury was the result of the actions of the driver of another vehicle whose identity is unknown or who is uninsured or underinsured.
Act 806 was signed by the Governor on July 22, 1991, and its provisions were not made retroactive by the legislature. Since the date of the accident herein was September 9, 1988, Act 806 is not applicable to this case. However, it does represent public policy expressed by the legislature in this area and can be considered by us in our decision. See, Carona v. State Farm Insurance Company, 458 So.2d 1275 (La. 1984); In the Matter of the Succession of Bertaut, 572 So.2d 142, 145 at fn. 6 (La. App. 1st Cir.1990), writ denied, 573 So.2d 1111 (La.1991).
The legislature has plainly rejected the physical contact requirement in uninsured motorist coverage. Further, although the plaintiff must prove that the injury is the result of the actions of the unknown driver, the legislature did not adopt the language of the Springer and Fore cases regarding an unbroken chain of events "occurring in a continuous sequence." Rather, the amendment is couched in language which points to a duty-risk analysis, which presents no impediment to plaintiff's recovery in this instance. Therefore, the lack of testimony by any witness that he actually saw the log fall from a vehicle is not prejudicial to the plaintiff under the specific circumstances of this case and the factual findings of the trial judge.
This clearly expressed public policy, when combined with the second factor present herein not present in our earlier case to the contrary (Chapman), the testimony of "an independent and disinterested witness," during a full trial on the merits rather than as part of a motion for summary judgment, warrants a different result. We find no legal error in the decision of the trial judge that there was coverage under the circumstances of this case, and affirm the judgment at appellant's costs.
AFFIRMED.
LeBLANC, J., concurs.
NOTES
[1] Although the title of plaintiff's petition did not refer to him as "Sr.," the remainder of his petition did; therefore, we will also refer to him in that manner.
[2] In Ray, four vehicles were involved in a chain-reaction rear-end collision at an intersection controlled by a red traffic light. The plaintiff's vehicle was referred to as Vehicle No. 1 and the uninsured vehicle as Vehicle No. 4; two intermediate vehicles were held to comprise the physical contact required for UM coverage to apply.