602 So.2d 1076 (1992)
Claude THIBODEAUX and Stella Thibodeaux
v.
John DOE and Allstate Insurance Company.
No. 91 CA 0816.
Court of Appeal of Louisiana, First Circuit.
June 29, 1992.
Writ Denied October 30, 1992.
*1077 Mack E. Barham, New Orleans, for plaintiffs and appellants Claude and Stella Thibodeaux.
Stephen LaRussa, Houma, for defendant and appellee Allstate Ins. Co.
Before SHORTESS, LANIER and CRAIN, JJ.
SHORTESS, Judge.
On January 2, 1986, Stella Thibodeaux (plaintiff) was involved in an automobile accident while traveling south on Louisiana Highway 57 in Terrebonne Parish. The accident was caused by the fault of an unidentified motorist (Doe) who began a passing maneuver, apparently unaware that plaintiff was in the process of passing him. Plaintiff veered left in an attempt to avoid the Doe vehicle, went through a ditch, and struck a telephone pole. She sued Allstate Insurance Company (Allstate), her uninsured motorist carrier, to *1078 recover damages for the physical injuries she sustained. Her husband, Claude Thibodeaux, joined in the suit claiming damages for loss of consortium.
The parties filed a joint motion to bifurcate the trial on the issues of liability and damages. After a bench trial, the trial court ruled plaintiffs had failed to prove physical contact between the vehicles. The court found there was no coverage under Allstate's policy and dismissed plaintiffs' suit. Plaintiffs appeal, alleging three errors of the trial court:
1. The trial court erred in separately trying the issue of physical contact.
2. The trial court erred in requiring plaintiffs to prove physical contact in order to recover.
3. The trial court erred in finding there was no physical contact.

1. Was the Bifurcation Proper?
Louisiana Code of Civil Procedure article 1562 permits separate trials on the issues of damages and liability with the consent of all parties. Plaintiffs contend a trial solely on the issue of physical contact was an improper bifurcation because it did not decide the ultimate question of liability. Plaintiffs contend that had they prevailed on the issue of physical contact, Allstate would then have been permitted to try the issue of liability.
However, the joint motion to bifurcate filed by plaintiffs and Allstate provides:
All counsel feel that a decision regarding the issue of "contact" shall effectuate a final disposition of this case.
. . . . .
In the interest of judicial economy, the parties hereto desire that this matter proceed to trial only on the issue of liability (i.e., relative to the issue of "contact"), and that a bifurcation of the trial occur such as to litigate only the issue of liability.
Furthermore, at the beginning of the trial, defense counsel advised the trial judge, "We have ... bifurcated this trial and decided to try it before you this morning solely on the issue of whether there was contact, and thus coverage, because we both feel that that is the only and the crucial issue in this proceeding."
There is no suggestion anywhere in the record that the entire issue of liability was not tried. Allstate did not attempt to reserve the right to try any other issues regarding liability later if plaintiffs prevailed on the coverage issue. Coverage was Allstate's only defense; an adverse ruling on the coverage issue would have been a finding of liability against Allstate. We find no merit in this assignment of error.

2. Was Contact Necessary for Coverage?
Allstate issued a business automobile policy to Sea Jay Boat Rentals, Inc., which insured the vehicle plaintiff was operating at the time of the accident. The uninsured motorists insurance endorsement contains the following provision:

B. WE WILL PAY
1. We will pay all sums the insured is legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle.
"Uninsured motor vehicle" is defined in the policy as:
a land motor vehicle or trailer:
* * * * * *
d. Which is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an insured, a covered auto or a vehicle an insured is occupying.
Thus, under the clear provisions of the policy, Allstate provided uninsured motorist coverage only if there was physical contact between plaintiff's vehicle and the Doe vehicle.
An insurance policy is a contract, and the rules governing the interpretation of written agreements apply to insurance contracts. Hemel v. State Farm Mutual Automobile Insurance Co., 211 La. 95, 29 So.2d 483 (1947); D'Angelo v. Doe, 535 So.2d 31, 32 (La.App. 4th Cir.1988), writ denied, 537 So.2d 1163 (La.1989). An insurance contract is the law between the parties, and every provision therein must be construed as written. Insurers may limit *1079 their liability where such limitation is clearly and expressly set forth in the contract and is not violative of public policy. D'Angelo, 535 So.2d at 32.
Plaintiffs contend the physical contact provision in Allstate's policy violates the public policy of this state. However, it is well settled that such physical contact requirements are valid, enforceable, and not against public policy. Kellams v. Oliver, 595 So.2d 331 (La.App. 3d Cir.), writ denied, 596 So.2d 556 (1992); Chapman v. State, 517 So.2d 331, 332 (La.App. 1st Cir.1987), writ denied, 518 So.2d 511 (La.1988); St. Amant v. Aetna Casualty & Surety Co., 499 So.2d 322 (La.App. 1st Cir.1986).
The physical contact requirement has two bases: (1) it prevents, as much as possible, false or fraudulent claims; and (2) it allows recovery under circumstances in which the insured otherwise could not carry the burden of proof. The second basis is explained by McKenzie and Johnson in their insurance treatise:
The insured bears the burden of proof to establish every fact essential to a cause of action under the policy coverage. One essential element is proof that the negligent motorist was uninsured. When the owner and driver of the adverse vehicle cannot be identified, the insured is unable to prove lack of insurance. Therefore, the inclusion of coverage for a hit and run vehicle allows recovery under circumstances in which the insured otherwise could not carry the burden of proof, and the insurer may impose the physical contact requirement on this voluntary extension of coverage.
15 Shelby McKenzie and Alston Johnson, Louisiana Civil Law Treatise § 111, at pp. 234-235 (1986) (footnote omitted).
At the time this accident occurred, the legislature did not require insurance companies who sold uninsured motorist policies to include coverage for "miss and run" accidents. In 1991 the legislature amended LSA-R.S. 22:1406(D)(1)(f) to mandate "miss and run" coverage under limited circumstances. That amendment was not made retroactive by the legislature. Since the amendment creates an obligation on behalf of insurers, it is substantive and can apply only prospectively in the absence of contrary legislative expression. La.C.C. art. 6; Pinkney v. Progressive Specialty Insurance Co., 597 So.2d 1168, 1171 (La. App. 1st Cir.1992).
In Pinkney, this court stated that the amendment could be considered by the court as representative of public policy expressed by the legislature in this area. Looking to the amendment for guidance, the court disregarded the long-standing jurisprudentially-created rule that the contact must be part of an unbroken chain of events occurring in a continuous sequence.
Plaintiffs contend that Pinkney requires this court to abrogate the physical contact requirement, regardless of the date the accident occurred. However, Pinkney and the instant case are easily distinguished. It was undisputed that in Pinkney there was contact between plaintiff's motorcycle and a log which had fallen from another vehicle. The issue was the definition of "contact," not whether the physical contact provision was enforceable.
The Pinkney court did not find that the amendment to the uninsured motorist statute could be applied retroactively; it specifically held it could not. While this court can look to the amendment for guidance in interpreting a provision of the policy, we will not apply the amendment, or the public policy behind it, to alter the terms of the insurance contract between the parties. The trial court did not err in upholding the physical contact requirement.

3. Did the Court Err in Finding No Contact?
Plaintiffs contend credibility was not the issue before the trial judge. According to plaintiffs' brief, "the eyewitnesses did not give conflicting stories  the trial court could have believed all of them, and come out with a consistent version of the facts." Plaintiffs thus contend the issue was sufficiency, i.e., whether plaintiffs put on enough evidence of physical contact to make a prima facie case, and whether Allstate put on enough proof to rebut it.
*1080 This court's review of the record, however, reveals testimony which cannot be reconciled. We are of the opinion that this clearly is a case in which the Rosell[1] manifest error standard of review should apply.
Two witnesses testified unequivocally that there was no contact between plaintiff's vehicle and the Doe vehicle. Byron Naquin was two vehicles behind plaintiff's vehicle at the time of the accident. He was driving a soft drink route delivery vehicle, a tractor with a large sixteen-bed trailer. Gregory L. Scallon was a passenger in the vehicle. Both Naquin and Scallon testified they had a clear view of the accident because of the height of the cab in which they were riding.
On the issue of contact, Naquin testified:
A I've never, never saw any contact. The Thibodeaux vehicle just swerved to miss the car that was pulling out and ran onto the shoulder then lost control, and then the other car kept going.
. . . . .
Q Now, did the two vehicles get very close to each other or close to each other at all?
A They got close, but not close enough for contact.
. . . . .
Q Okay. How close did the vehicles come in your estimation?
A 2-3 feet maybe. I don't know.
Scallon's testimony was similar:
Q. Did you at any time observe any physical contact between the two vehicles that you have described?
A. No, sir. When the car  when the second car went to go move over the lady, the one that ran off the road, she moved over with it. It wasn't  I mean I don't think  I didn't see the car hit her and force her off the road. She just moved over to stop from being hit.
Antoine Parfait, whose vehicle was behind the Doe vehicle, testified he did not see any contact between the two vehicles, but "I could say it did and I could say it didn't `cause it was so close that it could have hit and couldn't." Tellis Matthews, who was driving a Mack truck three to four vehicles behind the Doe vehicle, first testified there was contact. He later equivocated somewhat:
Q You actually didn't see or observe contact, did you?
A Sir, when they were going down the highway the lady was out and he broke out on her and he crossed the line in her, I mean he was in her path, he was on her and I saw  and he moved back. Now, to me it seemed like he had hit her. That's what I'm saying. It seemed like he had hit her.
Plaintiff steadfastly maintained there was contact between her vehicle and Doe's. Her credibility was called into question, however, by the testimony of Trooper Barry Hebert, who investigated the accident, Herbert "Buddy" Owens, the Allstate adjuster who handled plaintiff's claim, William R. Stacom, the Allstate Unit Claim Manager who photographed plaintiff's car after the accident, Gregory Whitney, Allstate's accident reconstruction expert; and the statement she made to Dr. K. Gerald Haydel in the emergency room following the accident, which was contained in the hospital records introduced into evidence.
Hebert testified plaintiff told him at the scene that "she was able to get out of the way of the other vehicle before it, it hit her and there was no contact between the two vehicles." The history taken by Haydel states: "This 57 year old lady was admitted because she was involved in a motor vehicle accident at which time she was driving and states that a car came toward her and she forced her car off the road and hit a tree." Owens stated that on two occasions plaintiff told him there was no contact.
Hebert also testified he examined plaintiff's vehicle and the roadway and found no physical evidence of contact between the two vehicles. Owens testified his examination *1081 of the vehicle showed no sign of contact with another vehicle. Whitney and Stacom corroborated Owens' and Hebert's testimony regarding lack of physical evidence of contact.
Based on this evidence, the trial court was not clearly wrong in finding plaintiffs failed to prove physical contact by a preponderance of the evidence. The judgment of the trial court dismissing plaintiffs' suit against Allstate Insurance Company with prejudice is hereby affirmed at plaintiffs' costs.
AFFIRMED.
NOTES
[1] Rosell v. ESCO, 549 So.2d 840 (La.1989).