831 So.2d 1144 (2002)
Nelda J. MITCHELL, Individually and on Behalf of the Heirs at Law and Wrongful Death Beneficiaries of David E. Mitchell, Deceased
v.
UNITED SERVICES AUTOMOBILE ASSOCIATION OF SAN ANTONIO, TEXAS (USAA).
No. 2001-CA-01362-SCT.
Supreme Court of Mississippi.
December 5, 2002.
*1145 Richard T. Phillips, Batesville, Lundy W. Daniel, Memphis, TN, attorneys for appellants.
Robert F. Stacy, Jr., Oxford, attorney for appellee.
EN BANC.
SMITH, P.J., for the Court.
¶ 1. This case concerns a claim for uninsured motorist coverage pursuant to the policy terms of an insurance contract. David E. Mitchell (Mitchell) suffered injuries in a car accident on May 1, 1995, and subsequently died. United Services Automobile Association (USAA) had issued an insurance policy with uninsured motorist benefits to Mitchell. The policy provided a $300,000 uninsured motorist coverage limit for each of the two vehicles described in the policy. Accordingly, the policy provided for an aggregate amount of $600,000 in coverage. However, USAA ultimately denied the uninsured motorist benefits to the widow, Nelda J. Mitchell (Nelda) and her children.
¶ 2. On March 18, 1998, Nelda on behalf of herself and her two children, Jessica Anne Mitchell and Benjamin Parrish Mitchell (collectively named hereinafter as "Nelda"), filed suit against USAA in Tunica County Circuit Court to recover the uninsured motorist insurance benefits.
¶ 3. After an agreed change of venue to the Circuit Court of DeSoto County, the case was tried by agreement before the circuit court sitting without a jury. The trial court denied coverage under the insurance policy to Nelda. The trial court based its decision in part on the lack of physical contact between Mitchell's vehicle and the unidentified, uninsured motorist vehicle. Nelda timely appealed to this Court. Finding no error by the trial court, we affirm.

FACTS
¶ 4. On May 1, 1995, David E. Mitchell was killed in an automobile collision on U.S. Highway 61 in DeSoto County, Mississippi. Charles Garrett (Garrett) was an eyewitness to the accident. By stipulation, all parties agreed that the collision occurred according to the description of events by Garrett in his deposition. The parties also agreed that in the event coverage was applicable, USAA would pay $600,000, no more and no less. This meant that if coverage was awarded then a payment of $600,000 would made with no fifteen percent (15%) appeal penalty, no prejudgment interest, no post-judgment interest, and no further litigation. The parties stipulated that there was no physical contact between Mitchell's vehicle and the tortfeasor's vehicle. Further, the parties stipulated that neither the owner/operator nor the vehicle have been found and that the owner/operator of the vehicle is unknown in the sense that the person cannot be identified
¶ 5. According to Garrett, at the time of the collision, Highway 61 was a two lane road. Garrett was traveling north toward Memphis. He looked in his rear view window and noticed a white car going in and out of traffic. The white car was also traveling in a northerly direction. The white car was small with Tennessee license plates and driven by a black male. Garrett saw a Mercury Sable station wagon (owned by Mitchell) traveling southbound. The white car passed Garrett and pulled into the oncoming lane occupied by Mitchell's station wagon. At this point the white car and Mitchell's station wagon were approaching each other head-on. Garrett realized *1146 the potential for a wreck and pulled to the shoulder of the road and stopped his van.
¶ 6. Mitchell's vehicle pulled off the road to avoid a head-on collision. The white car, on the other hand, continued north and did not stop. Garret stated that "[t]he Mercury went off on down in the ravine. It looked like a rocket when it came out. The next thing I knew, all I seen was a blaze of fire." Mitchell's vehicle then came all the way across the road and hit the front of Garrett's van. The station wagon went underneath and then came out from under Garrett's van. Garret did not see any contact between the white car and the station wagon.
¶ 7. Mitchell had motor vehicle insurance with USAA at the time of the collision and his death. The uninsured motorist coverage had an aggregate amount of $600,000.
¶ 8. The parties agreed to try the case without a jury. At the close of Nelda's case, the trial court sitting without a jury denied USAA's motion for directed verdict. Following this ruling, USAA put on no proof at trial. After reviewing the evidence the trial court determined that Nelda was not entitled to uninsured motorist benefits under the USAA policy. From this ruling, Nelda and the children filed an appeal to this Court.

ISSUES
1. Whether the trial court erroneously denied Mitchell's claim for uninsured motorist coverage against United Services Automobile Association.
2. Whether the trial court erroneously admitted into evidence statistics and the affidavit of Charles J. Weeks.

DISCUSSION
¶ 9. This case boils down to a dispute between the coverage provided pursuant to the Mississippi uninsured motorist statute definitions, Miss.Code Ann. § 83-11-103 (1999), and the contracted coverage as provided in the USAA policy to Mitchell. Specifically, the parties disagree whether, under the policy definitions and facts of this case, uninsured motorist coverage is provided under provisions C(1) and (2). In addition, the parties dispute the significance of Section C(4) of the policy and the minimum requirements of the uninsured motorist statute where there is no physical contact between the insured and an unidentified vehicle and owner or operator of that vehicle. The parties base their arguments on the definitions as provided in the statute and the insurance policy.
¶ 10. Nelda argues that the USAA policy does not match the statute. She claims that the policy expands and provides more coverage than the uninsured motorist statute, and therefore, she argues the trial court erroneously denied her benefits under the contract. USAA, on the other hand, argues that the policy is consistent with the uninsured motorist statute and no coverage exists in this case.
¶ 11. The applicable Mississippi Code defining uninsured motorists at issue is as follows:
(c) The term "uninsured motor vehicle" shall mean:
(i) A motor vehicle as to which there is no bodily injury liability insurance; or
(ii) A motor vehicle as to which there is such insurance in existence, but the insurance company writing the same has legally denied coverage thereunder or is unable, because of being insolvent at the time of or becoming insolvent during the twelve (12) *1147 months following the accident, to make payment with respect to the legal liability of its insured; or
(iii) An insured motor vehicle, when the liability insurer of such vehicle has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist coverage; or
(iv) A motor vehicle as to which there is no bond or deposit of cash or securities in lieu of such bodily injury and property damage liability insurance or other compliance with the state financial responsibility law, or where there is such bond or deposit of cash or securities, but such bond or deposit is less than the legal liability of the injuring party; or
(v) A motor vehicle of which the owner or operator is unknown; provided that in order for the insured to recover under the endorsement where the owner or operator of any motor vehicle which causes bodily injury to the insured is unknown, actual physical contact must have occurred between the motor vehicle owned or operated by such unknown person and the person or property of the insured. No vehicle shall be considered uninsured that is owned by the United States government and against which a claim may be made under the Federal Tort Claims Act, as amended.
Miss.Code Ann. § 83-11-103 (1999).
¶ 12. The applicable portion of the USAA insurance policy reads as follows:
C. Uninsured motor vehicle means a land motor vehicle or trailer of any type:
1. To which no liability bond or policy, or deposit of cash or securities applies at the time of the accident.
2. To which a liability policy applies at the time of the accident. In this case its limit for liability must be less than the limit of liability for this coverage.
3. To which a liability bond or deposit of cash or securities applies at the time of the accident but is not enough to pay the full amount the covered person is legally entitled to recover as damages.
4. Which is a hit and run vehicle whose operator or owner cannot be identified and which hits you or any family member; a vehicle which you or any family member are occupying; or your covered auto.
5. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company denies coverage or is or becomes insolvent.
¶ 13. Nelda contends that the lawsuit centers on the contract between Mitchell and USAA and not on the minimum requirements as provided in the Mississippi uninsured motorist act provisions. The argument addresses the "physical contact" requirement when the identity of an uninsured motor vehicle driver is unknown.
¶ 14. Nelda claims that under the insurance policy contract, she is entitled to collect the uninsured motorist benefits. She bases her claim on the theory that the tortfeasor's vehicle is considered an uninsured motorist vehicle in accordance with Sections C(1) and (2) of the policy. As the above cited USAA policy provisions indicate, recovery is allowable when either the tortfeasor (1) has no liability insurance, Section C(1); or (2) when the tortfeasor has liability insurance but the limits are in an amount less than the $600,000 uninsured motorist coverage provided in Mitchell's USAA policy, Section C(2).
*1148 ¶ 15. Further, Nelda asserts that the trial court erred when it stated that "[i]n order to recover uninsured motorist benefits, both the statute and the USAA policy require physical contact when the identity of the alleged uninsured motorist is unknown." She claims that the USAA policy does not require physical contact when either an owner or an operator of a vehicle, defined as an uninsured motor vehicle pursuant to Section C(1) and (2), is unknown. Again, Section C(1) and (2) covers the insured when there is either no liability insurance or if the liability coverage limits are less than the Mitchell's USAA $600,000 policy limit.
¶ 16. In addition, Nelda asserts that the USAA policy never requires physical contact, with the exception of Section C(4), a "hit and run" definition. She claims that this is not a hit and run case, as expressly plead in the complaint. Also, the policy never requires physical contact if the identity of uninsured motorist, as defined by Sections C(1) and (2) is unknown.
¶ 17. USAA argues that Section C(4) restricts the uninsured motorist coverage when physical contact occurs and the owner or operator is not identified. As for Section C(1) and (2), USAA maintains that the circumstances, as outlined in these two provisions of the policy, address identified vehicles for a comparison of policy limits. Again, USAA states Mitchell's policy is consistent with Miss.Code Ann. § 83-11-103(c)(v).
¶ 18. The trial court noted that pursuant to Massachusetts Bay Insurance Co. v. Joyner, 763 So.2d 877, 881 (Miss.2000), that the USAA policy was similar to Miss. Code Ann. § 83-11-103. Citing Joyner the trial court held that "the statute does not allow recovery in the absence of physical contact, notwithstanding provisions (c)(i) and (iii)."
¶ 19. A review of the policy reveals that physical contact is required in the event of a hit and run accident. Again, a comparison of Section C(4) of the contract states that an uninsured motor vehicle is one "[w]hich is a hit and run vehicle whose owner or operator cannot be identified and which hits you...." (emphasis added). The key language in the statute states that "[a] motor vehicle of which the owner or operator is unknown; provided that in order for the insured to recover under the endorsement where the owner or operator of any motor vehicle which causes bodily injury to the insured is unknown, actual physical contact must have occurred...." Miss.Code Ann. §XX-XX-XXX(c)(v) (emphasis added).
¶ 20. Indeed, the trial court provided an incredibly insightful conclusion:
This Court is loath to reach this conclusion. The result is horrendous. We have a plaintiff who was killed as the result of the actions of another driver who cannot provide insurance coverage since he fled the scene. Disinterested witnesses confirm the factual occurrences and there is no hint nor possibility of fraud. Denying plaintiff coverage in this case means that anyone finding themselves in a similar situation must, in order to be sure the insurance they have paid for will cover them, let themselves be hit by the offending driver of the other vehicle since every responsible driver in this area is well aware of the fact that almost no one in the Mid South area has insurance, or adequate insurance, on their car. Of course, then the responsible driver will be faced with a counter claim or criminal charges, if serious injuries result, for his failure to take the last clear chance to avoid the accident and mitigate damages.
Understandably, an insurer wants to guard against a false claim for uninsured *1149 motorist coverage when an insured has a one car accident yet claims another unknown driver caused the accident. However, in the instant case Garrett was a witness to the events that led to the accident, and both parties stipulated to his version of events.
¶ 21. Based on recent caselaw, the trial court was correct in its conclusion. The facts of the present case are almost identical to the facts in Massachusetts Bay Insurance Co. v. Joyner, 763 So.2d 877 (Miss.2000), where there was also no physical contact between the vehicles. This Court held in Joyner that the Mississippi uninsured motorist statute, Miss.Code Ann.§ 83-11-103(v), required actual physical contact when the owner or operator of the adverse vehicle is unknown or cannot be identified. Id. at 881.
¶ 22. USAA argues that the policy is consistent with the uninsured motorist statute and no coverage exists. We agree with this argument. The parties agreed that the owner of the white vehicle was unknown and that there was no physical contact between the white vehicle and Mitchell's car. Had there been any contact, there would have been a recovery for Mitchell. However, based on the absence of physical contact, the decision of the Circuit Court of DeSoto County is affirmed.
¶ 23. As for USAA's contention that the trial court erred by admitting statistical information and an affidavit into evidence in this non-jury case, this issue is without merit.

CONCLUSION
¶ 24. For these reasons, the judgment of the Circuit Court of DeSoto County is affirmed.
¶ 25. AFFIRMED.
PITTMAN, C.J., WALLER, COBB AND CARLSON, JJ., CONCUR. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J., AND GRAVES, J. EASLEY, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J.
DIAZ, J., Dissenting:
¶ 26. The purpose of the physical contact requirement in Mississippi's Uninsured Motorist Act is to prevent insurers from being subjected to false claims. The argument goes that if insureds are allowed to merely claim, on their own bond, that someone ran them off the road and caused them injury, they will constantly be defrauding their insurer. This argument may have merit in some situations; however, I strongly believe that there must an exception to the general rule, especially where, as here, there is undisputed evidence that another vehicle caused the accident. Since, according to the stipulated facts surrounding this tragic accident, the claim of the plaintiff-insured is valid and non-fraudulent, it is evident that it would be contrary to the statutory policy and legislative intent of Miss.Code Ann. § 83-11-103 (1999) to permit the physical impact requirement to bar this plaintiff-insured's valid claim against this defendant-insurer. Because I disagree with the majority's conclusion that there can never be uninsured motorist coverage in the absence of physical contact, I respectfully, but adamantly, dissent.
¶ 27. The Legislature decided that the "physical contact" rule was proper for Mississippi. While we can question its wisdom in adopting a rule that sometimes produces harsh results, we cannot disregard its authority or disobey its command. However, it is not unheard of in this State for the judiciary to create exceptions to the general rule. Nor is it unheard of for *1150 this Court, and the other courts of this State, to make equitable decisions that are slightly in derogation of statutory commands in order to comply with the spirit, if not the letter, of the law. This is such a situation if ever there was one.
¶ 28. The purpose of Mississippi's Uninsured Motorist Coverage Act, Miss.Code Ann. §§ 83-11-101 to -111 (1999 & Supp. 2000), is to provide the same protection to one injured by an uninsured motorist as that individual would have if injured by a financially responsible driver. Lawler v. Government Employees Ins. Co., 569 So.2d 1151, 1153 (Miss.1990). It is clear that in the case at bar, strict adherence to the physical contact requirement will destroy a valid claim. It will completely erase the protection that Mitchell's widow would have received had her husband been killed by a financially responsible driver and is therefore contrary to the stated policy underlying enactment of the Uninsured Motorist Act.
¶ 29. Other states have eliminated the physical contact requirement. Although physical contact requirements are a legitimate mechanism for preventing fraud by "foreclos[ing] claims arising from accidents that were allegedlybut not actually caused by the operation of an unidentified vehicle,"[1] many courts have declined to strictly enforce clauses in policies requiring physical contact: "Courts in approximately half the states have concluded that insurers are not entitled to enforce the `physical contact' requirement because it is in derogation of the uninsured motorist legislation and is therefore void."[2]
¶ 30. In State Farm Fire & Casualty Co. v. Lambert, 291 Ala. 645, 285 So.2d 917 (1973), the Alabama Supreme Court determined that the physical contact requirement in the hit-and-run provision of an automobile insurance policy was in derogation of the Alabama Uninsured Motorist Statute and was void as against public policy. In so holding the Court adopted the rationale of the Supreme Court of Florida in Brown v. Progressive Mutual Insurance Co., 249 So.2d 429, 430 (Fla. 1971):
"`The argument that the policy requirement of physical contact is reasonable is fallacious. The only reason for such a requirement is to prove that the accident actually did occur as a claimant may say it did. This is a question of fact to be determined by the jury, or the judge if demand for jury trial is not made. If the injured party can sustain the burden of proof that an accident did occur, he should be entitled to recover, regardless of the actuality of physical contact.'"
285 So.2d at 920 (quoting Brown, 249 So.2d at 430). The Alabama Supreme Court has also held that a corroborative-evidence requirement stating the insurer would only accept competent testimony of a person other than a claimant, if an accident involved no physical contact with an uninsured motorist was void as against that state's public policy. Walker v. Guideone Specialty Mut. Ins. Co., 2002 WL 960048, ___ So.2d ___ (Ala.2002).
¶ 31. The Louisiana legislature amended its uninsured motorist statute in 1990 to include a corroboration exception to the physical impact requirement. This *1151 amendment and a subsequent change were described in Eudy v. State Farm Mutual Automobile Insurance Co., 620 So.2d 405 (La.Ct.App.1993), as follows:
The 1990 amendment added the following provision to the UM statute:
§§ 1406 D(1)(d)
... The coverage provided under this Subsection shall not provide protection for any of the following: (i) Damage where there is no actual physical contact between the covered motor vehicle and an uninsured motor vehicle, unless the injured party can show, by an independent and disinterested witness, that the injury was the result of the actions of the driver of another vehicle whose identity is unknown or who is uninsured or underinsured. Acts 1990, No. 677.
The language of this amendment allowed an insured, even in the absence of physical contact, to recover from his UM insurer for damages sustained as a result of the negligence of an unidentified driver. In 1991 the legislature further amended the UM statute, adding the following provision:
§§ 1406 D(1)(f)
Uninsured motorist coverage shall include coverage for bodily injury arising out of a motor vehicle accident caused by an automobile which has no physical contact with the injured party or with a vehicle which the injured party is occupying at the time of the accident, provided that the injured party bears the burden of proving, by an independent and disinterested witness, that the injury was the result of the actions of the driver of another vehicle whose identity is unknown or who is uninsured or underinsured. Acts 1991, No. 806.
Id. at 407-08. (citing La.Rev.Stat. § 22:1406).
¶ 32. In Surrey v. Lumbermens Mutual Casualty Co., 384 Mass. 171, 424 N.E.2d 234 (1981), the Massachusetts Supreme Judicial Court found a physical contact requirement in an insurance policy void. The court held that the words "hit-and-run," within that state's uninsured motorist statute cannot be read literally to mean actual physical contact, but must be given their ordinary lexical meaning to further the aim of the uninsured motorist statute of minimizing catastrophic financial loss for victims of automobile accidents caused by negligence of uninsured tortfeasors.
¶ 33. In Hamric v. Doe, 201 W.Va. 615, 499 S.E.2d 619, 623-24 (1997), the West Virginia Supreme Court of Appeals concluded that "absolute enforcement of the physical contact requirement is contrary to public policy" and that "the physical contact requirement should not prevent recovery when there is sufficient independent third-party evidence to conclusively establish that the sequence of events leading to an injury was initially set in motion by an unknown hit-and-run driver or vehicle."
¶ 34. In my opinion, this reasoning is persuasive. I would create an exception to the physical contact requirement where the insured can prove by competent evidence that another vehicle caused the accident.
¶ 35. The majority supports its decision by deferring to the will of the Legislature. As outlined above, other states have seen fit to make exceptions to such harsh legislative enactments in order to fulfill the underlying purpose of uninsured motorist acts, to-wit, providing protection for innocent victims. Despite this trend, the majority's decision to await legislative action is in accord with this Court's precedent. See Anderson v. State Farm Mut. Auto. Ins. Co., 555 So.2d 733, 734 (Miss.1990) ("Where the legislature has enacted upon a *1152 subject within its competence, we may not annul or evade what it has done."). Though I disagree with the majority's decision and strongly believe that corroborative evidence exception is both proper and consistent with the purpose and goal of § 83-11-103, I submit, in the alternative, that an exception is an unnecessary addition under the facts of this case because the requirements of § 83-11-103 have been met.
¶ 36. The key language in Mississippi's Uninsured Motorist Act states that the term "uninsured motorist" shall mean, inter alia, "[a] motor vehicle of which the owner or operator is unknown; provided that in order for the insured to recover under the endorsement where the owner or operator of any motor vehicle which causes bodily injury is unknown, actual physical contact must have occurred between the motor vehicle owned or operated by such unknown person and the person or property of the insured." Miss.Code Ann. § 83-11-103(c)(v) (emphasis added). In this case, the negligent driver who caused the death of Mitchell is not unknown. He was a black male driving a small white car with a Tennessee license plate. The fact that his name is not known should make no difference. A disinterested witness provided uncontradicted testimony as to his existence and the fact that he caused this accident. In my opinion, that is enough to satisfy the spirit of § 83-11-103(c)(v).
¶ 37. In addition, this Court has found that the physical contact requirement can be satisfied through contact by objects and vehicles other than the uninsured motorist's vehicle. In Southern Farm Bureau Casualty Insurance Co. v. Brewer, 507 So.2d 369 (Miss.1987), this Court found that physical contact occurred between an insured vehicle and an uninsured motorist when the vehicle driven by an uninsured motorist suddenly, without warning, cut in front of the insured's vehicle and in doing so struck a brake drum lying in the lane of traffic and propelled it through the windshield of the insured's automobile, striking the insured in face. This Court held there was "physical contact" sufficient to satisfy the physical contact requirement for recovery under the insurance policy and under the uninsured motorist provision of our statute. (clarifying Miss.Code Ann. § 83-11-103(c)(v); Aetna Cas. & Sur. Co. v. Head, 240 So.2d 280 (Miss.1970); George v. Miss. Farm Bureau Mut. Ins. Co., 250 Miss. 847, 168 So.2d 530 (1964)).
¶ 38. In Brewer this Court opined that "physical contact" may include indirect physical contact by the unidentified vehicle "with an intermediate vehicle or other object which, in the same mechanism of the accident, strikes the insured's vehicle...." 507 So.2d at 372 (quoting Springer v. GEICO, 311 So.2d 36, 39-40 (La.Ct.App.1975)). While permitting indirect contact with the unidentified vehicle to satisfy the physical contact requirement, this Court nonetheless required that "the injury causing impact must have a complete, proximate, direct and timely relationship with the first impact ... In effect, the impact must be the result of an unbroken chain of events with a clearly definable beginning and ending, occurring in a continuous sequence." Id. (quoting Springer, 311 So.2d at 39-40). Cf. Aetna Cas. & Sur. Co. v. Head, 240 So.2d 280 (Miss.1970) (finding no "physical contact" where bottle thrown from unidentified passing vehicle struck insured vehicle).
¶ 39. Brewer also held that:
The rationale for the physical contact requirement in automobile insurance policies is to prevent fraudulent claims, ostensibly by providing objective evidence that a vanishing motorist had in fact been involved in the accident. *1153 Clark v. Regent Ins. Co., 270 N.W.2d 26 (S.D.1978); Couch, 12A Insurance 2d §§ 45:643 (1981). But where, as in the case at bar, each side stipulates to the damages incurred by the plaintiff and that the injury received was the result of and caused by the negligence of the hit-and-run driver, the possibility of fraud does not exist.
507 So.2d at 372.
¶ 40. In the case sub judice, Garrett was a witness to the accident, and both parties stipulated to his version of the events. He testified that, because of the erratic driving of the white car and what he perceived as the potential for a collision based upon the carelessness of its driver, Garrett pulled his van to the side of the road. He further testified that Mitchell pulled off the road to avoid a head-on collision with the white vehicle. Mitchell's vehicle went down into a ravine and emerged "like a rocket." It burst into flames, then came all the way across the road and hit the front of Garrett's van. In my opinion, considering this Court's prior admonition that courts are to liberally construe the Uninsured Motorist Act to provide coverage, Box v. State Farm Mut. Auto. Ins. Co., 692 So.2d 54,56 (Miss.1997), Mitchell's contact with Garrett's van is sufficient physical contact to satisfy § 83-11-103.
¶ 41. This impact was "the result of an unbroken chain of events with a clearly definable beginning and ending, occurring in a continuous sequence" and would not have happened but for the white car's driver's negligence. Brewer, 507 So.2d at 372. This negligence was the direct and proximate cause of the contact with Garrett's van, which was the "intermediate vehicle or other object which, in the same mechanism of the accident, strikes the insured's vehicle ..." Id. If a brake drum, set in motion by an unidentified driver, which causes injury to an innocent motorist can be physical contact sufficient to satisfy the statute, then so should be another vehicle that is forced to the side of the road by an identified driver. See also Johnson v. State Farm Mut. Auto. Ins. Co., 70 Wash.2d 587, 424 P.2d 648 (1967) (where the court held that there was "physical contact" when an unknown vehicle struck a second vehicle, which in turn struck insured's vehicle).
¶ 42. In another case, State Farm Mutual Automobile Insurance Co. v. Johnson, 242 Miss. 38, 133 So.2d 288 (1961), this Court ruled that a widow was entitled to recover funeral expenses under the medical payment clause of Johnson's insurance contract. Johnson was driving his automobile across a bridge when the right wheel of the car dropped over the right side. Johnson enlisted the help of a passerby and together they placed a plank beneath the car. As the other man drove the car forward; the plank was propelled into Johnson's body, proximately causing his injury and death. Although this case involved no hit-and-run vehicle and was decided prior to the passage of the Uninsured Motorist Act, the Court accepted the propelling of an object by a vehicle into the insured as a compensable injury.
¶ 43. In the case at bar, Garrett stopped his van on the side of the road as a result of the erratic driving of the man in the white car. His van was in this location when Mitchell crashed into it. It would not have been there but for the negligence of the driver of the white car. As in Johnson, the object causing a portion of the injury to Mitchell was set in motion by the white car, and thus, Mitchell's uninsured motorist coverage was triggered.
¶ 44. In Anderson v. State Farm Mut. Auto. Ins. Co. 555 So.2d 733 (Miss.1990), this Court required physical contact between the unidentified motorist and the *1154 innocent driver and refused to adopt a corroborative evidence exception. However, the Court discussed Brewer, stating:
The interpretive issue before the Court lay within the penumbra of doubt regarding "actual physical contact," both the statute and contract being without explicit directive regarding physical contact between the uninsured motorist's vehicle and another object which in turn struck the plaintiff. Reflection makes clear that an exclusion of cases where the uninsured motorist strikes an object which strikes the plaintiff could produce absurd results. Consider, for example, the case where the uninsured motorist rearends one vehicle which in turn strikes the plaintiff's vehicle in the rear.
Id., at 734-35. In my opinion, the absurd result warned of in Anderson is apparent today. It is clear that the white car forced Garrett's van to the shoulder of the road. It follows that Mitchell, also forced off the road by the white car, would not have made contact with Garrett's van had it not been forced into that location. Requiring either Garrett or Mitchell to make contact with the white car is an absurd prerequisite to recovery. As Justice McRae pointed out in his well-reasoned dissent in Massachusetts Bay Ins. Co. v. Joyner, 763 So.2d 877 (Miss.2000):
Under the majority's semantically correct, yet logically flawed construction of the UM statute, in order for an insured to "activate" the policy, he must wait until the automobile "strikes" his car before attempting to avoid immediate danger. Such a requirement would be inconsistent with this Court's view that one should mitigate its damages. Cf.Barkley v. Miller Transps., Inc., 450 So.2d 416, 420 (Miss.1984)("It is [one's] duty ... to take reasonably proper steps to avoid an accident or injury ... after having knowledge of the danger.").
763 So.2d at 883.
¶ 45. As that portion of the trial court's ruling that is quoted by the majority recognizes, strict adherence to the letter of the law creates a manifest injustice in the case at bar. This injustice has been recognized by many courts. To prevent this result, and yet "uphold" the impact requirement, courts have been compelled to write creatively. For example, in Barfield v. Insurance Co. of North America, 59 Tenn.App. 631, 443 S.W.2d 482 (1968), the court held that a "physical contact" requirement was satisfied when the rear wheels of an unidentified vehicle propelled a rock through a claimant's windshield causing him severe injury. See also S. Farm Bureau Cas. Ins. Co. v. Brewer, 507 So.2d 369 (Miss.1987). In one extreme case, a California arbitrator decided that a "physical contact" requirement was satisfied when only oncoming headlight beams "struck" insured's vehicle prior to an accident! A.I. Widiss, A Guide to Uninsured Motorist Coverage, § 2.41, at 84-5 n. 194 (1969).
¶ 46. The preceding examples indicate a trend toward the erosion of the strict adherence to the letter of this law. The statute is designed for the protection of injured persons, not for the benefit of insurance companies or motorists who cause damage to others. I agree that in some situations, a physical contact requirement can be a valuable tool to prevent fraudulent claims. However, where there is a disinterested witness whose unchallenged testimony establishes that another vehicle caused the accident, I believe that there must be an exception to the general rule. Thus, I implore the Legislature to reconsider the effect of this absolute rule and to adopt a corroborative evidence exception, and I most respectfully, but also adamantly, *1155 disagree with the majority's refusal to do so today. Furthermore, I believe that Mitchell's contact with Garrett's van fully satisfied § 83-11-103's physical contact requirement and the precedent of this Court. It was a direct result of the negligence of the driver of the white car. Accordingly, I would reverse and remand the decision of the circuit court and instruct it on remand to award to Mitchell's widow the uninsured motorist coverage that he purchased from USAA.
McRAE, P.J., AND GRAVES, J., JOIN THIS OPINION.
EASLEY, J., Dissenting:
¶ 47. In my view, the majority errs in affirming the circuit court's determination that Nelda is not entitled to recover the $600,000 in uninsured motorist coverage benefits. Therefore, I respectfully dissent.
¶ 48. In the case sub judice, Nelda's evidence provided that the requirements of Sections C(1) and (2) of the policy were met. The trial court noted that "[p]laintiffs have offered into evidence statistical evidence the percentages of vehicle in the states of Tennessee, Mississippi and Arkansas which USAA insures with automobile liability limits of $600,000.00 or more. This evidence and Plaintiff's argument as to its relevancy are well taken and statistically prove, to a preponderance of the evidence, that the white vehicle was uninsured."
¶ 49. As for Section C(4) pertaining to a hit and run vehicle, Nelda specifically noted in her complaint that the collision was not a "hit and run" accident. The USAA policy does not impose a contact requirement under Section C(1) or (2); the only physical contact requirement is found in Section C(4) of the policy. However, the trial court noted that pursuant to Massachusetts Bay Ins. Co. v. Joyner, 763 So.2d 877, 881 (Miss.2000), the USAA policy was similar to Miss.Code Ann. § 83-11-103 (1999). Citing Joyner, the trial court held that "the statute does not allow recovery in the absence of physical contact, notwithstanding provisions (c)(i) and (iii)."
¶ 50. However, a review of the policy reveals that physical contact is only required in the event of a hit and run accident. Again, a comparison of Section C(4) of the contract states that an uninsured motor vehicle is one "[w]hich is a hit and run vehicle whose owner or operator cannot be identified and which hits you ...." (emphasis added). The key language in the statute states that "[a] motor vehicle of which the owner of operator is unknown; provided that in order for the insured to recover under the endorsement where the owner or operator of any motor vehicle which causes bodily injury to the insured is unknown, actual physical contact must have occurred...." Miss.Code Ann. § 83-11-103(c)(v) (emphasis added).
¶ 51. Sections C(1) and (2) clearly do not require physical contact or identification. The trial court erred by imposing a condition that is not expressly stated in the policy drafted by the insurer. The only provision that required physical contact was contained in Section C(4). Physical contact is not required under the contracted terms of the policy in the event that any time there is an occurrence of an unknown uninsured motorist. The insurer could have simply remedied the situation by having more explicit policy terms which did not limit the physical contact to hit and run instances. The insurance policy is a contract, and while the statute does provide for uninsured motorist coverage, its requirements do not limit contracting capabilities, provided the contract does not reduce the statutory mandates. Guardianship of Lacy v. Allstate Ins. Co., 649 So.2d 195 (Miss.1995).
*1156 ¶ 52. Indeed, the trial court provided an insightful conclusion based on a practical application of the law:
This Court is loath to reach this conclusion. The result is horrendous. We have a plaintiff who was killed as the result of the actions of another driver who cannot provide insurance coverage since he fled the scene. Disinterested witnesses confirm the factual occurrences and there is no hint nor possibility of fraud. Denying plaintiff coverage in this case means that anyone finding themselves in a similar situation must, in order to be sure the insurance they have paid for will cover them, let themselves be hit by the offending driver of the other vehicle since every responsible driver in this area is well aware of the fact that almost no one in the Mid South area has insurance, or adequate insurance, on their car. Of course, then the responsible driver will be faced with a counter claim or criminal charges, if serious injuries result, for his failure to take the last clear chance to avoid the accident and mitigate damages.
(emphasis added). Understandably an insurer wants to guard against a false claim for uninsured motorist coverage when an insured has a one car accident yet claims another unknown driver caused the accident. However, in the instant case Garrett was a witness to the events that led to the accident, and both parties stipulated to his version of events. Therefore, fraud is not a concern in the case sub judice. It must be remembered that the insurer, USAA, drafted the policy. Policies are interpreted in favor of the insured, and insurance contracts "are to be construed strongly against the policy drafter." J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co., 723 So.2d 550 (Miss.1998). While the statutorily mandated coverage cannot be diminished by policy language, there is nothing to stop coverage from being enhanced or expanded for the insured. Guardianship of Lacy, 649 So.2d at 197. The statute provides a more restrictive coverage than the USAA policy. However, USAA drafted the policy which provided the expanded coverage. Nelda proved that the requirements of Section C(1) and (2) were met; and therefore, she should not be denied the full benefit of coverage for which her now deceased husband prudently contracted with USAA. Accordingly, the uninsured motorist coverage of $600,000 should be awarded to Nelda, and the circuit court's judgment should be reversed and rendered.
McRAE, P.J., JOINS THIS OPINION.
NOTES
[1] 1 Alan I. Widiss, Uninsured and Underinsured Motorist Insurance § 9.2, at 565 (Rev.2d ed.1999). See also David J. Marchitelli, Annotation, Uninsured Motorist Indorsement: Construction and Application of Requirement that There Be "Physical Contact" with the Unidentified or Hit-And-Run Vehicle; "Miss-And-Run Cases," 77 A.L.R. 5th 319, § 2[a] at 340 (2000).
[2] 1 Widiss § 9.7, at 612.